**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD., <br><br> **Plaintiff,** <br><br> v. <br><br> TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., and BYTEDANCE INC., <br><br> **Defendants**. | Case No. 6:21-CV-504 <br><br> JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff Beijing Meishe Network Technology Co., Ltd., also known as Beijing MeiCam Network Technology Inc., Ltd., or also known as Meishe  Co., Ltd. ("Meishe"), by and through counsel of record, asserts the following claims of copyright infringement, misappropriation of trade secrets, unfair competition by misappropriation, Lanham Act false advertising,  unjust enrichment, and  aiding and abetting a breach of fiduciary duty against Defendants TikTok Inc. ("TikTok Inc."), TikTok Pte. Ltd. ("TikTok Pte. Ltd."), ByteDance Ltd. ("BL"), and ByteDance Inc. ("BI") (collectively, "Defendants").

## SUMMARY OF THE ACTION

1. This is an action for copyright infringement of Meishe's software copyrighted and registered with the Copyright Protection Centre of China (CPCC). Plaintiff Meishe is, and at all material times hereto, has been the owner of the copyright of Copyright Registration Nos. 2015SR227927,     2018SR037751,     2018SR037747,     2018SR038324,     2018SR218096, 2018SR218287,    2019SR0901188,    2019SR0901198,    2019SR0901209,    2019SR0899912, 2019SR0899814,    2019SR0899799,    2019SR0901175,    2019SR0901166,    2020SR0291426,

1

2020SR0575533, 2020SR0572713, 2020SR0572704 ("Copyrighted Works").

2.      Meishe's Copyrighted Work is a foreign work as defined by the Copyright Act and a copyright registration is not necessary to bring a claim of copyright infringement under 17 U.S.C. § 101 and 17 U.S.C. § 104(b)(2).

3.      Established in 2014, Meishe is a smart video and audio total solution service provider whose research and development team has been focusing on the development of the video and audio field for more than twenty years. Meishe's service content includes intelligent processing, recognition and deep learning of mobile video and audio images, covering customers in various industries such as mobile APP, smart phones, smart hardware, radio and television, and communication operators. The core R&D team masters industry expertise, and the projects it participates in have won many awards including the first prize of the National Science and Technology Progress Award. OPPO, ViVO, Xiaomi, Bilibili, State Grid, People's Video, Huya, and other top customers are highly recognized.

4.      Meishe alleges that Defendants infringe upon Meishe's software copyrighted and registered with the Copyright Protection Centre of China (CPCC).

5.      This is also an action for misappropriation of trade secrets associated with Defendants making and using Plaintiff's software and inducing users of the TikTok software application and website (hereinafter, "app" or "TikTok app") to use the infringing system in Texas.

6.      Meishe alleges Defendants unfairly competed with Plaintiff in Texas by misappropriation of Plaintiff's trade secrets and their widespread distribution of the TikTok app within the State of Texas.

7.      Meishe alleges Defendants violated the Lanham Act by making false and misleading descriptions and representations of fact.

8.      Meishe claims Defendants were unjustly enriched by unlawfully obtaining and integrating Plaintiff's copyrighted software and trade secrets into its own software and widely distributing it to their consumers in the State of Texas.

9.      Meishe alleges Defendants aided and abetted Jing Xie's breach of fiduciary duty he owed to Meishe.

## THE PARTIES

10.      Beijing Meishe Network Technology Co., Ltd., also known as Beijing MeiCam Network Technology Inc., Ltd., or also known as Meishe  Co., Ltd. ("Meishe") is a privately held company formed under the laws of the People's Republic of China with a principal place of business at Room 501, 5th Floor, Xin Ao-Te Science and Technology Building, 131 West Fourth Ring North Road,  Haidian District, Beijing, People's Republic of China 100097.

11.      On information and belief, Defendant TikTok Inc. is a California corporation with a regular and established place of business in Austin, Texas, and a registered agent for service of process in the State of Texas at Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12.      On information and belief, Defendant TikTok Pte. Ltd. is a Singapore corporation with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1, Singapore 018960.

13.      On information and belief, Defendant ByteDance Ltd. is a Cayman Islands corporation with offices in the United States, including in this District.

14.      On information and belief, Defendant ByteDance Inc. is a Delaware corporation with a regular and established place of business in this District.

## DEFENDANTS, TIKTOK USERS, AND THIS DISTRICT

15.    ByteDance Ltd. is the parent and owner of TikTok Inc., ByteDance Inc., and TikTok Pte. Ltd. *See* Exhibit A, Plaintiffs' Amended Corporate Disclosure Statements, *ByteDance, Inc., TikTok, Inc., and TikTok Pte. Ltd. v. Triller, Inc.*, Case No. 3:20-cv-7572, Dkt. 10 (N.D. Cal. Nov. 11, 2020).

16.    Defendant ByteDance Ltd. is a global company incorporated in the Cayman Islands, with offices in the United States, China, Singapore, and the United Kingdom, among others. *See* Exhibit B, Complaint, *TikTok Inc. and ByteDance Ltd. v. Donald J. Trump and Wilbur L. Ross, Jr.*, No. 20-cv-2658, U.S. District Court for the District of Columbia (hereinafter, the "DC Litigation"), Dkt. 1, ¶¶ 19, 37.

17.    ByteDance Ltd. developed the TikTok app and operates and controls the app in the United States through its subsidiaries and affiliates, including but not limited to TikTok Inc., ByteDance Inc., and TikTok Pte. Ltd. *See id.* at ¶¶ 13, 20. *See also* https://support.tiktok.com/en/using-tiktok.

18.    ByteDance Ltd. operates the app throughout the United States, including within this District. *See id.* at ¶¶ 1, 13 ("TikTok [is] a mobile software application that 100 million Americans use[.]").

19.    On information and belief, ByteDance Ltd. controls the majority of the shares or other ownership interest(s) in ByteDance Inc., TikTok Inc., and TikTok Pte. Ltd.

20.    On information and belief, ByteDance Ltd. controls or attempts to control the activities of ByteDance Inc., TikTok Inc., and TikTok Pte. Ltd.

21.    On information and belief, Defendants operate ByteDance Ltd.'s TikTok business in the United States as a joint enterprise. *See* https://www.tiktok.com/transparency?lang=en

("TikTok is a flagship product of ByteDance Ltd. . . . TikTok does business through subsidiaries of ByteDance Ltd.").

22.     On information and belief, ByteDance Ltd. shares common officers and/or directors with TikTok Inc. In the DC Litigation, Vanessa Pappas testified that she is the "head of TikTok, Inc. and interim head of the global TikTok business for ByteDance Ltd.," and purports to speak on behalf of TikTok Inc. and ByteDance Ltd. *See* Exhibit C, Declaration of Vanessa Pappas, DC Litigation, Dkt. 15-3, ¶ 1). In the same litigation, Roland Cloutier testified that he is the Global Chief Security Officer for TikTok Inc. and that provides support for both TikTok Inc. and ByteDance Ltd., and like Ms. Pappas, he purports to speak for both. *See* Exhibit D, Declaration of Roland Cloutier, DC Litigation, Dkt. No. 15-2, ¶¶ 1-3.

23.     On information and belief, individuals associated with TikTok characterize themselves as being employed by TikTok *and* ByteDance. For example, Blake Chandlee represents on his LinkedIn profile as the President of Global Business Solutions "at ByteDance / TikTok[,]" located in Austin, Texas. *See* Exhibit E. Ashley Elizabeth Brown refers to herself as the "office administrator at ByteDance / TikTok" located in Austin, Texas. *See* Exhibit F.

24.     On information and belief, TikTok Inc. employees perform services for ByteDance Inc., and ByteDance Inc. employees perform services for TikTok Inc. On its website, www.bytedance.com, ByteDance Inc. actively recruits employees within this District as "ByteDance" but includes supporting "TikTok" as part of job descriptions. *See* Exhibits G and H.

25.     According to an August 17, 2020 Austin Business Journal article, TikTok employees were "working out of WeWork space at the SWSW Center at 14th and Lavaca streets [in Austin, Texas], according to the company[.]" *See* Exhibit I. And further, "TikTok has [] stated that it had committed to creating 10,000 jobs across the country in the next three years, including

2,000 in Texas[.]" *Id.*

26.     On information and belief, Defendants have a regular and established place of business in this District, including offices in Austin, Texas, which Defendants, Defendants' agents or subsidiaries rely upon and use to support their activities within this District that result in copyright infringement and misappropriation of trade secrets.

27.     On information and belief, TikTok Inc., ByteDance Inc., and TikTok Pte. Ltd. all use the TikTok logo as agents for ByteDance Ltd. in the manufacture, sale, offer for sale, and/or use of the TikTok app in the inducement of others to use the TikTok app, including in this District.

28.     Defendants actively and continuously induce users to download and use the TikTok app and provide instructions online for downloading and using the TikTok app. *See* https://support.tiktok.com/en/getting-started; https://support.tiktok.com/en/using-tiktok.

29.     Defendants operate the TikTok app in the United States, including in this District. *See* Exhibit B, Complaint, DC Litigation, Dkt. 1, ¶¶ 1, 20.

30.     On information and belief, ByteDance Inc. "makes" TikTok Products, while TikTok Inc. and ByteDance Inc. develop and provide the TikTok app. *See* Exhibit J, at ¶¶ 7, 23. Both TikTok Inc. and ByteDance Inc. support the TikTok app in the United States. *Id.*

31.     On May 6, 2021, the Apple App Store listed TikTok Pte. Ltd. as the seller of the TikTok app:



*See* https://web.archive.org/web/20210507014640if_/https://apps.apple.com/ug/app/tiktok/id835599320.

32.     The May 6, 2021 archive.org "Privacy Policy" link states that the TikTok app is "provided and controlled by TikTok Inc." *See* https://web.archive.org/web/20210506211059/ https://www.tiktok.com/legal/privacy-policy.

# Privacy Policy

(If you are a user having your usual residence in the US)

*Last updated: December 20, 2020.*

Welcome to TikTok (the "Platform"). The Platform is provided and controlled by TikTok Inc. ("TikTok", "we" or "us"). We are committed to protecting and respecting your privacy. This Privacy Policy covers the experience we provide for users age 13 and over on our Platform. For information about our under-13 experience ("Children's Platform") and our practices in the United States regarding children's privacy, please refer to our Privacy Policy for Younger Users.

Capitalized terms that are not defined in this policy have the meaning given to them in the Terms of Service.

*See id.*

33.     The "Terms of Service" hyperlinked in the "Privacy Policy" link confirms that references to "TikTok" are synonymous with references to TikTok Inc.:

# Terms of Service

(If you are a user having your usual residence in the US)

*Last updated: February 2019*

## 1. Your Relationship With Us

Welcome to TikTok (the "Platform"), which is provided by TikTok Inc. in the United States (collectively such entities will be referred to as "TikTok", "we" or "us").

*See* https://web.archive.org/web/20210506185206/https://www.tiktok.com/legal/terms-of-service ?lang=en#terms-us.

34.     The TikTok app has been widely distributed in this District by ByteDance Ltd. through its agents, including TikTok Inc. and TikTok Pte. Ltd., using the Apple and Android App stores. For example, on March 11, 2021, The Daily Texan, which is the official newspaper of the

University of Texas at Austin, reported specifically on University of Texas at Austin students who produce "viral content on 'UT Tok[.]" The article also discusses how one viral clip created by a UT student who has "over 240 thousand views and nearly 50 thousand likes."



*See* https://web.archive.org/web/20210516194907/https://thedailytexan.com/2021/03/11/ut-austin-students-produce-viral-content-on-ut-tok/.

35.    As further example of the TikTok apps distribution and use in this district and more specifically, the Waco division of this district, is the story of how a "viral TikTok changed two lives for the better while touching the hearts of millions."



*See* https://www.kxxv.com/news/viral-tiktok-touches-the-hearts-of-millions.

36.     Another TikTok page #wacotexas has received 14.6 million views illustrating the

broad use of the TikTok app in this district and more specifically, the Waco division of this district.



*See* https://www.tiktok.com/tag/wacotexas?lang=en.

37.     On or about August 24, 2020, TikTok Inc. and ByteDance Ltd. filed a complaint in

the Central District of California seeking to prevent the government from banning the TikTok app

in the United States. *See* Exhibit K, *TikTok Inc. and ByteDance Ltd. v. Donald J. Trump and Wilbur

L. Ross, Jr.*, No. 20-cv-7672, Dkt. 1, ¶ 1 (C.D. Cal. Aug. 24, 2020). On the same day, TikTok Inc.

issued a press release, stating that TikTok Inc. was hiring employees throughout the United States,

including Texas:

> "[O]ur more than 1,500 employees across the US pour their hearts into
> building this platform every day, with 10,000 more jobs planned in
> California, **Texas**, New York, Tennessee, Florida, Michigan, Illinois, and
> Washington State[.]"

*See* Exhibit L, https://newsroom.tiktok.com/en-us/tiktok-files-lawsuit.

38.     According to a January 26, 2021 Bloomberg article, ByteDance Ltd.'s operating profit grew to approximately $7 billion in 2020, from less than $4 billion the prior year. The article specifically attributes "ByteDance's phenomenal growth [to its] pioneer[ing] a new form of social video[.]" *See* Exhibit M.

39.     An article from Forbes magazine published on January 31, 2020 reported that "TikTok attracts these users . . . [as] it's far easier to edit and upload [video] content in TikTok than in other app such as Instagram or Snapchat." *See* Exhibit N.

## JURISDICTION AND VENUE

40.     This action includes a claim for copyright infringement arising under the Copyright Laws of the United States, Title 17 of the United States Code. 17 U.S.C § 501.

41.     Therefore, this Court has subject matter jurisdiction pursuant to at least 28 U.S.C. §§ 1331.

42.     The amount in controversy exceeds $75,000.

43.     This Court has personal jurisdiction over Defendants by virtue of Defendants' systemic and continuous contacts with this District.

44.     This Court has personal jurisdiction over Defendants by virtue of, inter alia, the fact that Defendants have committed, aided, induced, and/or participated in the commission of the tortious act of copyright infringement and other acts alleged in other claims in this Complaint that led to foreseeable harm to Meishe in this District.

45.     On information and belief, Defendants offer products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District. On information and belief, Defendants, Defendants' agents, and/or subsidiaries

distribute products directly to customers and through their partners and/or intermediaries located in this District. On information and belief, Defendants derive significant financial benefits through their business in Texas and in this District.

46.     On information and belief, the TikTok app has been downloaded over 175 million times within the United States, with millions of those users of Defendants' products and services within the State of Texas, many of whom reside within this District.

47.     This Court has personal jurisdiction over TikTok Pte. Ltd. and ByteDance Ltd. As foreign corporations, personal jurisdiction exists over TikTok Pte. Ltd. and ByteDance Ltd. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Further, this Court has personal jurisdiction over TikTok Pte. Ltd. and ByteDance Ltd. based on the fact that they are responsible for causing copyright infringement to occur in this District.

48.     Pursuant to the Texas Long Arm Statute and to due process, this Court has specific personal jurisdiction over Defendants in this action. The claims asserted herein arise out of or are related to Defendants' conducting of substantial business in this forum in addition to voluntary contacts with this forum. Such voluntary contacts, either directly or through their subsidiaries and/or agents, include but are not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more infringing products and/or services into this District and into the stream of commerce with the intention and expectation that they will be used by consumers and end users in this District; and/or (iii) regularly promoting business and thus deriving substantial revenue from its product and/or services, including the infringing product and/or services, provided to consumers in Texas and in this District. Defendants are subject to the Court's personal jurisdiction at least due to their distribution of products and/or services, including the infringing product and/or services within the State of Texas and the Western District of Texas.

Within this state, Defendants have infringed and used Meishe's copyrighted software thereby committing, and continuing to commit, acts of copyright infringement alleged herein.

49.     Defendants are subject to the Court's jurisdiction, because ByteDance Ltd. developed the TikTok app, placed the app in the stream of commerce, and along with TikTok Inc., TikTok Pte. Ltd., and ByteDance Inc., ByteDance Ltd. caused the app to be distributed and utilized in this District with the intent that it be used pursuant to the terms dictated by Defendants. And further, Defendants have derived revenues from their infringing acts occurring within the Western District of Texas. Because Defendants have committed such purposeful acts and transactions in Texas, it reasonably should know and expect that it could be haled into this Court because of its purposeful activities.

50.     Defendants have committed and continue to commit acts in violation of the Copyright Laws of the United States, Title 17 of the United States Code, including but not limited to reproducing and/or having reproduced Meishe's copyrighted works, preparing and/or having preparing derivative works based on Meishe's copyrighted works, and/or distributing and/or having distributed Meishe's copyrighted works in this state and in or from this District. Defendants' infringing conduct has caused, and continues to cause, injury to Meishe, including injury suffered in this District. These are purposeful acts and transactions in this state and in this District such that Defendants reasonably should know and expect that it could be haled into this Court because of such activities.

51.     Defendants' other acts alleged, including those supporting claims of trade secret misappropriation, also independently show that this Court has jurisdiction over Defendants in this case.

52.     TikTok Pte. Ltd. and ByteDance Ltd. are foreign corporations, and venue is

therefore proper in this District because pursuant to 28 U.S.C. § 1391(c)(3), foreign defendants are subject to venue in any district in the United States for this additional reason.

## GENERAL ALLEGATIONS

### The Meishe App

53.     Meishe is the owner of a copyright in Meishe software (hereinafter "Meishe app"), a computer program that enables users to complete professional-level video and audio editing processing on the mobile side through simple operations, making high quality video and audio clips.

54.     Meishe developed the Meishe app and further developed the Meishe SDK, providing users with video and audio editing functions. Meishe registered "Meishe 1.0" and some of its updates with the Copyright Protection Centre of China (CPCC), with Copyright Registration No. 2015SR227927 for "Meishe v1.0" and 2018SR037751, 2018SR037747, 2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704 for updated versions.

### The TikTok App

55.     On or around May 2017, ByteDance Ltd. developed the TikTok app, the international version of a Chinese application, Douyin, and launched the TikTok app outside of mainland China. The TikTok app allows users to create short videos, which often feature music in the background and can be sped up, slowed down, or edited with a filter. ByteDance Ltd. operates and controls the app in the United States through its subsidiaries and affiliates, including but not limited to TikTok, Inc., TikTok, PTE. Ltd., and ByteDance, Inc.

**The Accused Copyright Infringement**

56.     In March 2021, Meishe discovered that a series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018. These apps include, but are not limited to, TikTok, Douyin, Jianying, and CapCut. Meishe personnel conducted an analysis between code of Meishe app and that of TikTok app shows that the code used to implement video and audio editing functions in the two apps is highly similar, proving that Defendants copied Meishe's copyright work.

57.     Though Meishe cannot obtain the source code of TikTok app, Meishe was able to conduct a comparison between "TikTok v8.5.0" object code and "Meishe v2.5.4" object code. On the Android platform, object code of an app is in the form of Android application package ("APK") file. The release version refers to the APK file. "TikTok v8.5.0" APK file can be obtained from public channels. In March 2021, Meishe downloaded "TikTok v8.5.0" APK file from a third-party android app store.

**Defendants' Access to Meishe's Work and Code**

58.     On information and belief, Defendants' access to Meishe's source code came through Meishe's former employee, Mr. Jing Xie, who is currently working for Defendants.

59.     During his employment in Meishe and its affiliate, Mr. Jing Xie had access to and control over Meishe's trade secrets, proprietary software codes, and/or other confidential information.

60.     Mr. Jing Xie began his employment in Meishe's affiliate "Xin Ao-Te" in 2007 and began his employment in Meishe in March 2015. As C++ R&D engineer at "Xin Ao-Te" and Meishe, Mr. Jing Xie directly participated in the development of "Meishe

v1.0" and the subsequent upgrades of various versions until his resignation on or around June 8, 2015.

61.     During his employment, each time Mr. Jing Xie committed his modification for Meishe software in the SVN system, he, as any other employee, had to first check out the corresponding subtree of the repository to get a so-called "working copy". The SVN system recorded all the relevant operations in its logs. These logs prove that Mr. Jing Xie accessed Meishe's source code and downloaded the source code.

62.     On June 8, 2015, Mr. Jing Xie resigned from Meishe citing personal reasons.

63.     On information and belief, Mr. Jing Xie subsequently knowingly and illegally took a copy of Meishe's trade secret and copyrighted computer code when he left the company and subsequently provided it to one or more later employers who incorporated that code into other software including but not limited to TikTok.

64.     On information and belief, t\he software containing Meishe's code was then widely distributed to consumers throughout the State of Texas.

65.     According to Mr. Jing Xie's LinkedIn and Maimai pages, Mr. Jing Xie began his employment at ByteDance as multimedia audio and video director on or around October 2017. Maimai is of a Chinese version of LinkedIn.

## FIRST CLAIM FOR RELIEF – COPYRIGHT INFRINGEMENT
## (17 U.S.C. § 501)

66.     Plaintiff Meishe incorporates by reference, as if fully rewritten herein, the facts and allegations set forth in paragraphs 1 through 64, above.

67.     Plaintiff Meishe is, and at all material times hereto, been the owner of the copyright of Copyright Registration Nos. 2015SR227927, 2018SR037751,

2018SR037747, 2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704, filed with the Copyright Protection Centre of China (CPCC) and thus is entitled to enforce its copyright and protect itself against copyright infringement.

68.     When the United States joined the Berne Convention on March 1, 1989, the Copyright Act, 17 U.S.C.S. § 101 *et seq.*, was revised to provide that the claimant of a copyright in any foreign work of a country that is also a signatory to the Berne Convention may file suit in a United States District Court without proof of copyright registration. Berne Convention Implementation Act of 1988, Mar. 1, 1989, Pub. L. No. 100-568; 17 U.S.C.S. § 411(a).

69.     The People's Republic of China joined the Berne Convention for the Protection of Literary and Artistic Works of September 9, 1986, as amended on October 2, 1979 ("the Berne Convention") on October 15, 1992, thus becoming a treaty party. *See* 17 U.S.C. § 101; Berne Notification No. 140, the World Intellectual Property Organization ("WIPO"), (July 15, 1992), located at https://www.wipo.int/treaties/en/notifications /berne/treaty_berne_140.html.

70.     Meishe's Copyrighted Works are foreign works as defined by the Copyright Act and a copyright registration is not necessary to bring a claim of copyright infringement under 17 U.S.C. § 101 and 17 U.S.C. § 104(b)(2).

71.     The dates of publication of the copyrighted software are as following:

| Registration numbers | The dates of publication of the registration |
| --- | --- |

| 2015SR227927 | 9/27/2014 |
|---|---|
| 2018SR037751 | 6/5/2017 |
| 2018SR037747 | 11/5/2017 |
| 2018SR038324 | 4/5/2017 |
| 2018SR218096 | 5/5/2017 |
| 2018SR218287 | 6/5/2017 |
| 2019SR0901188 | 8/29/2019 |
| 2019SR0901198 | 8/29/2019 |
| 2019SR0901209 | 8/29/2019 |
| 2019SR0899912 | 8/29/2019 |
| 2019SR0899814 | 8/29/2019 |
| 2019SR0899799 | 8/29/2019 |
| 2019SR0901175 | 8/29/2019 |
| 2019SR0901166 | 8/29/2019 |
| 2020SR0291426 | 3/26/2020 |
| 2020SR0575533 | 6/5/2020 |
| 2020SR0572713 | 6/5/2020 |
| 2020SR0572704 | 6/5/2020 |

72.     Copyright Registration No. 2015SR227927, which was registered on September 27, 2014, is known as Meishe v1.0. Copyright Registration Nos. 2018SR037751, 2018SR037747, 2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704 were registered as updated versions to Meishe v1.0.

73.     Plaintiff has the exclusive rights to reproduce, display, and distribute the copyrighted software, registered as Nos. 2015SR227927, 2018SR037751, 2018SR037747,

2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704.

74.    On information and belief, the TikTok app consists of Plaintiff's proprietary information, trade secrets, and/or reproduced software codes of Plaintiff registered with the Copyright Protection Centre of China (CPCC) as Nos. 2015SR227927, 2018SR037751, 2018SR037747, 2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704.

75.    On information and belief, Defendants' software including but not limited to TikTok includes portions of code that are copyrighted and owned by Plaintiff and subject to one or more of the copyright registrations. On further information and belief, the code included portions of software code that were never made public or submitted the CPCC and constitute trade secrets of Meishe.

76.    On information and belief, the TikTok app began infringing Plaintiff's copyright in the software by reproducing, displaying, and profiting from inducing users to download and use the TikTok app.  Defendants have committed and continue to commit acts in violation of the Copyright Laws of the United States, Title 17 of the United States Code, including but not limited to reproducing and/or having reproduced Meishe's copyrighted works, preparing and/or having preparing derivative works based on Meishe's copyrighted works, and/or distributing and/or having distributed Meishe's copyrighted works.

77.     On information and belief, on or around April 2020, Defendants took steps to obfuscate its software code in order to conceal its infringement.

78.     In violation of 17 U.S.C. § 501, Defendants have and will continue to violate and infringe Plaintiff's copyright in the software registered by reproducing, displaying, and profiting from inducing users to download and use the TikTok app. Additionally, on information and belief, Defendants have violated 17 U.S.C. § 1202(a) and (b) by knowingly with the intent to induce, enable facilitate, or conceal infringement, provided copyright management information that is false and/or distributed or imported for distribution copyright information that is false, and intentionally removed or altered Meishe's copyright management information from the software it copied and distributed for importation copyright management information knowing that the copyright management information was removed or altered without Meishe's consent or having reasonable grounds to know that its actions would induce, enable facilitate, or conceal infringement.

79.     On information and belief, Defendants' acts of copyright infringement were done and continue to be done with knowledge that such actions could constitute infringement of Plaintiff's exclusive copyright and are, therefore, willful.

80.     Meishe previously filed multiple lawsuits against ByteDance alleging that ByteDance incorporated Meishe's protected code in its products.  These cases include, for example, a lawsuit filed on or about April 30, 2021 by Meishe against ByteDance and other Defendants.  As noted in the National Law Review on May 1, 2021, for example, "Meishe alleges that version 3.0 and later of Douyin released on November 1, 2018, copied video and audio editing and processing software code from Meishe Technology's copyrighted beauty photo software. Further, six other apps by Bytedance have traces of code plagiarism,

many of which have the same function names and even misspelled code copied from Meishe source code." (https://www.natlawreview.com/article/tiktok-maker-sued-2274-billion-rmb-copyright-infringement-and-trade-secret.)   TikTok is known in China as Douyin.  The story further notes, "Meishe states, 'Video and audio editing and processing functions are one of the most basic and core functions of the Douyin app. Based on these functions, several apps such as Douyin have gained hundreds of millions of users and have been downloaded billions of times and obtained huge profits from infringement.'"  Despite the litigation in China, on information and belief, Defendants have not altered their behavior and continue to infringe Meishe's copyrights and benefit from misappropriate of Meishe's trade secrets.

81.     On information and belief, Defendants will continue to violate Plaintiff's copyright and continue to unlawfully use that copyright in the TikTok app and distribute it in the State of Texas and elsewhere unless enjoined by this Court.

82.     Defendants do not have a license, authorization, or permission to use Plaintiff's copyright in the software codes identified above, or to reproduce, offer for sale and sell Plaintiff's copyright incorporated in the identified software in the State of Texas or elsewhere.

83.     As a result of Defendants' infringement of Plaintiff's copyright, Plaintiff has suffered damages and will continue to suffer damages in an amount yet to be determined. Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recovery of actual damages and any additional profits of Defendants.

84.     As a result of infringement of Plaintiff's copyright, Defendants are causing irreparable injury to Plaintiff that cannot be fully and adequately compensated at law and

will continue to cause irreparable injury unless and until enjoined by this Court. Plaintiff is entitled to entry of permanent injunctive relief prohibiting continuing copyright infringement by Defendants pursuant to 17 U.S.C. § 502.

## SECOND CLAIM FOR RELIEF – MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836(b)(1))

85.     Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

86.     The Defend Trade Secrets Act (the "DTSA") provides a federal private cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). It authorizes courts "to grant an injunction" to "prevent any actual or threatened misappropriation," including by "requiring affirmative actions . . . to protect the trade secret." Id. at § 1836(b)(3)(A)(i)–(ii).

87.     Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . formulas, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored," if (A) the trade-secret owner "has taken reasonable measures to keep such information secret," and (B) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Id. at § 1839(3).

88.     Plaintiff is the owner of trade secrets that include, but are not limited to proprietary software codes that allow for video and audio editing, video and audio processing, video and audio release, personalized audio and video recommendations,

21

webcasting, and other services.

89.     Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others. Plaintiff's trade secrets indisputably contribute to the monumental success it has seen since its inception.

90.     As alleged in the foregoing paragraphs, at all times, Plaintiff has taken reasonable and extensive efforts to keep their trade secrets secret through the use of employment agreements and other measures. All of Plaintiff's trade secrets are stored on secure servers and are password-protected.

91.     Plaintiff's trade secrets are crucial to the success of the implementation, operation, and maintenance of Plaintiff's proprietary technology, and business development. They provide a decisive competitive advantage to Plaintiff and to anyone else with access to this information. Plaintiff's trade secrets provide the company with a critical market advantage in attracting new customers.

92.     Plaintiff's ability to succeed in the competitive marketplace hinges on its ability to protect its proprietary information from public disclosure and from further use outside of Plaintiff and in particular, by its competitors.

93.     On or around 2007, Meishe's now former employee, Jing Xie, began his employment at with Meishe's affiliate, "Xin-Ao-Tie". On or around March 2015, Mr. Jing Xie began his employment with Meishe. At Meishe, Mr. Jing Xie's was C++ R&D engineer.

94.     From 2007 until on or around June 8, 2015, as C++ R&D engineer, Mr. Jing Xie had access to and control over Meishe's trade secrets, proprietary software codes, and/or other confidential information.

95.     On information and belief, on or around June 3, 2015, Mr. Jing Xie accessed and copied Meishe's software code and confidential information.

96.     As part of Mr. Jing Xie's employment agreement with Meishe, and as part of Meishe's company policy, Mr. Jing Xie was prohibited from improper acquisition, use, or disclosure of its trade secrets, proprietary software codes, and/or other confidential information for any purpose.

97.     On or about June 5, 2015, Mr. Jing Xie notified Meishe of his resignation and that his last day of employment would be on or about June 8, 2015.

98.     On information and belief, Mr. Jing Xie then knowingly took copyrighted and trade secret Meishe code that was incorporated into subsequent software including software controlled and distributed by ByteDance and its subsidiaries, including TikTok.

99.     Since on or about October 2017, Mr. Jing Xie's began his employment at Bytedance as multimedia audio and video director.

100.    Beijing Bytedance Technology Co., Ltd. (www.bytedance.com) is located at Room 10A, Building 2, No. 48, Zhichun Road, Haidian District, Beijing, China.

101.    At no time did Plaintiff consent to Mr. Jing Xie's, former employees or any current employee's improper acquisition, use, or disclosure of its trade secrets or confidential information for any purpose.

102.    In or around March 2021, Plaintiff audited Mr. Jing Xie's activities and discovered that on or about June 3, 2015, he downloaded Meishe's source code and/or other confidential information.  On or around May 14, 2021, Plaintiff notarized the SVN log and checked the committed log of Jing Xie on SVN.

103.    On information and belief, Defendants wrongfully acquired Plaintiff's

commercial trade secrets at least in the form of software codes. On further information and belief, Defendants that received Plaintiff's proprietary software codes knew or had reason to know that the software codes were improperly acquired by Defendants.

104.    On further information and belief, Defendants obtained other trade secret information from Meishe provided by Mr. Jing Xie and used it to Meishe's detriment, thereby damaging Meishe, including but not limited information about which portions of Meishe's software were most likely to be popular if incorporated into video editing features in smart phone applications.

105.    On information and belief, because of the singular nature of Defendants, they knew of and/or participated in the misappropriation of Plaintiff's trade secrets.

106.    On information and belief, Defendants induce users to download and use its products and services that embody Plaintiff's software codes, and therefore, are based, at least in part, on Plaintiff's trade secrets.

107.    On information and belief, Defendants' misappropriation led to Defendants' retaining an advantage over good faith competitors such as Plaintiff.

108.    Defendants' misappropriation also concerns "product[s] and service[s] used in, or intended for use in interstate or foreign commerce," pursuant to the Defend Trade Secrets Act. On information and belief, Defendants knowingly offer for sale, sell, and enable the use of products that embody Plaintiff's trade secrets, and therefore, are based, at least in part, on Plaintiff's trade secrets throughout the United States.

109.    This conduct is not only based on Plaintiff's trade secrets, but it also takes place in the United States and affects United States customers, including millions of users of TikTok located in the State of Texas.



Screenshot of TikTok videos tagged with #Texas as of May 15, 2021.

110.    Defendants' inducement for use, offers for sale, sales, and enabled use of the products that embody Plaintiff's trade secrets is ongoing.

111.    Defendants have also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Plaintiff and continue to do so.

112.    After improperly obtaining Plaintiff's trade secrets information, Defendants subsequently used this information in connection with its business activities, in a manner adverse to Plaintiff's business interests. Such use was and is without Plaintiff's express or implied consent.

113.    On information and belief, Defendants possess Plaintiff's trade secrets

and/or confidential or proprietary information or knowledge of Plaintiff that will be disclosed to the public through the TikTok app within the State of Texas and elsewhere.

114.    Damages were at least one proximate result of Defendants' acts in taking Plaintiff's confidential information.

115.    As a result, in violation of Plaintiff's rights, Defendants misappropriated, and continue to use, Plaintiff's trade secret information in the improper and unlawful manner described above. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

116.    As the direct and proximate result of Defendants' conduct in the United States and Texas, Plaintiff has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiff's business operates in a highly competitive market and will continue suffering irreparable harm absent injunctive relief.

117.    Plaintiff has been damaged by all of the foregoing and are entitled to an award of damages.

### THIRD CLAIM FOR RELIEF – MISAPPROPRIATION OF TRADE SECRETS UNDER THE TEXAS UNIFORM TRADE SECRETS ACT (TEX. CIV. PRAC. & REM. CODE ANN. § 134A)

118.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

119.    Under the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE ANN. § 134A, "trade secret" means "all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret;  and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

120.    Plaintiff is the owner of trade secrets that include, but are not limited to, proprietary software codes that allow for video editing, video processing, video release, personalized audio and video recommendations, webcasting, and other services.

121.    Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others. Plaintiff's trade secrets indisputably contribute to the monumental success it has seen since its inception.

122.    As alleged in the foregoing paragraphs, at all times, Plaintiff has taken reasonable and extensive efforts to keep their trade secrets secret through the use of employment agreements and other measures. All of Plaintiff's trade secrets are stored on secure servers and are password-protected.

123.    Plaintiff's trade secrets are crucial to the success of the implementation,

operation, and maintenance of Plaintiff's proprietary technology, and business development. They provide a decisive competitive advantage to Plaintiff and to anyone else with access to this information. Plaintiff's trade secrets provide the company with a critical market advantage in attracting new customers in Texas and elsewhere.

124.    Plaintiff's ability to succeed in the competitive marketplace in the State of Texas and elsewhere hinges on its ability to protect its proprietary information from public disclosure and from further use outside of Plaintiff and in particular, by its competitors.

125.    On or around 2007, Meishe's now former employee, Jing Xie, began his employment at with Meishe's affiliate, "Xin-Ao-Tie". On or around March 2015, Mr. Jing Xie began his employment with Meishe. At Meishe, Mr. Jing Xie's was C++ R&D engineer.

126.    As C++ R&D engineer, Mr. Jing Xie had access to and control over Meishe's trade secrets, proprietary software codes, and/or other confidential information.

127.    As part of Mr. Jing Xie's employment agreement with Meishe, and as part of Meishe's company policy, Mr. Jing Xie was prohibited from improper acquisition, use, or disclosure of its trade secrets, proprietary software codes, and/or other confidential information for any purpose.

128.    On or about June 5, 2015, Mr. Jing Xie submitted his resignation notice at Meishe, and his last day of employment was on or about June 8, 2015.

129.    On or about October 2017, Mr. Jing Xie's began his employment at ByteDance as multimedia audio and video director.

130.    At no time did Plaintiff consent to Mr. Jing Xie's, former employee's or any current employee's improper acquisition, use, or disclosure of its trade secrets or

confidential information for any purpose.

131.   In or around March 2021, Plaintiff audited Mr. Jing Xie's activities and discovered that on or around June 2015, he downloaded Meishe's source code and/or other confidential information.  On or around May 14, 2021, Plaintiff notarized the SVN log and checked the committed log of Jing Xie on SVN.

132.   On information and belief, Defendants wrongfully acquired at least Plaintiff's commercial trade secrets in the form of software codes. At least Defendants that received Plaintiff's proprietary software codes knew or had reason to know that the software codes were improperly acquired by Defendants.

133.   On information and belief, because of the singular nature of Defendants, they knew of and/or participated in the misappropriation of Plaintiff's trade secrets.

134.   On information and belief, Defendants induce users to download and use its products and services that embody Plaintiff's software codes, and therefore, are based, at least in part, on Plaintiff's trade secrets.

135.   On information and belief, Defendants' misappropriation led to Defendants' retaining an advantage over good faith competitors such as Plaintiff.

136.   Defendants' misappropriation also concerns "product[s] and service[s] used in, or intended for use in interstate or foreign commerce," pursuant to the Defend Trade Secrets Act. On information and belief, Defendants knowingly offer for sale, sell, and enable the use of products that embody Plaintiff's trade secrets, and therefore, are based, at least in part, on Plaintiff's trade secrets throughout Texas and the United States.

137.   This conduct is not only based on Plaintiff's trade secrets but it also takes place in the United States and affects United States customers, including millions of users

of TikTok located in the State of Texas.



Screenshot of TikTok videos tagged with #Texas as of May 15, 2021.

138.    Defendants' inducement for use, offers for sale, sales, and enabled use of the products that embody Plaintiff's trade secrets is ongoing.

139.    Defendants have also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Plaintiff and continue to do so.

140.    After improperly obtaining Plaintiff's trade secrets information, Defendants subsequently used this information in connection with its business activities, in a manner adverse to Plaintiff's business interests. Such use was and is without Plaintiff's express or implied consent.

141.    On information and belief, Defendants possess Plaintiff's trade secrets

and/or confidential or proprietary information or knowledge of Plaintiff that will be disclosed to the public through the TikTok app.

142.   Damages were at least one proximate result of Defendants' acts in taking Plaintiff's confidential information.

143.   As a result, in violation of Plaintiff's rights, Defendants misappropriated, and continue to use, Plaintiff's trade secret information in the improper and unlawful manner described above. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. Defendants have further attempted to and continue to attempt to conceal their misappropriation.

144.   As the direct and proximate result of Defendants' conduct in the United States and Texas, Plaintiff has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiff's business operates in a highly competitive market and will continue suffering irreparable harm absent injunctive relief.

145.   Plaintiff has been damaged by all of the foregoing and is entitled to an award of damages.

### FOURTH  CLAIM FOR RELIEF – UNFAIR COMPETITION BY MISAPPROPRIATION UNDER TEXAS LAW

146.   Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint set as if fully forth herein.

147.    Texas law recognizes claims for unfair competition by misappropriation. *See Primacy Eng'g, Inc. v. SAN Eng'g, Inc.*, No. 1:18-CV-129-RP, 2018 U.S. Dist. LEXIS 121459, at *4 n.2 (W.D. Tex. July 20, 2018) *and Amid, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 828 (S.D. Tex. 2017).

148.    Plaintiff owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

149.    Plaintiff created these trade secrets through extensive time, labor, skill, and money. Twelve employees worked to develop Meishe's code for nearly two years from about October 2013 to June 2015.

150.    Plaintiff's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. The functions involved in Meishe's trade secrets are the core elements of designing a universal and efficient video and audio streaming media processing engine framework. This streaming media framework has, for example, (1) high performance (the highly parallel processing of the architecture can maximize the utilization of system resources and greatly improve the performance of the streaming media engine); (2) high scalability (the architecture is suitable for simple video and audio playback, video, and audio editing to video synthesis engine); and (3) portability (the architecture can be applied to all platforms from mobile, PC to WEB).

151.    Meishe's trade secrets can enable a company without extensive experience in designing video and audio streaming media engines to create a high-performance, cross-platform video and audio processing platform in a relatively short time, and develop video

processing tool software for different application scenarios.

152.    Plaintiff has taken reasonable and extensive efforts to keep their trade secrets secret through the use of Nondisclosure and Confidentiality Agreements, employment agreements, employee training, and other measures. All of Plaintiff's trade secrets are stored on secure servers and are password-protected.

153.    Due to these security measures, Plaintiff's confidential and proprietary trade secret information is not available for others to use through any legitimate means.

154.    On information and belief, Defendants' use of Plaintiff's trade secrets through Defendants' employment of Mr. Jing Xie, Plaintiff's former employee, provided Defendants with a special advantage in competing against Plaintiff in Texas. Using Meishe's code, Defendants were able to shortcut the investment of research and development costs. Defendants have borne none of the substantial time, expenses, and efforts incurred by Plaintiff in creating these trade secrets.

155.    Defendants acts have caused injury to Plaintiff in the State of Texas by violating Texas law and hurting competition in the state in widely distributing their app containing Plaintiff's trade secrets to consumers in Texas.  By damaging competition in the State of Texas, Defendants' acts also caused injury to the State of Texas and consumers in Texas.

156.    Defendants' use of the trade secret information has caused damage to Plaintiff in an amount to be proven at trial.

## FIFTH  CLAIM FOR RELIEF – LANHAM ACT FALSE ADVERTISING

157.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

158.    Defendants made false and misleading descriptions and representations of fact, which were intended, likely, and did in fact mislead, cause confusion, cause mistake, and deceive as to their ownership of the software of its application to its consumers.

159.    TikTok informs users that it owns and has proper rights to the code it uses in its applications.  For example, it includes its own copyright notice at tiktok.com indicating that the contents are copyrighted by TikTok. ByteDance also promotes "[w]e believe that high ethical standards and a culture of integrity play a pivotal role in achieving the vision. Therefore, we have developed the ByteDance Code of Conduct and ByteDance Partner Code of Conduct." (https://www.bytedance.com/en/).   Its published Code of Conduct states, for example, "ByteDance has zero tolerance for unlawful or unethical conduct in any form …. ByteDancers and Partners must promote fair competition and respect our competitors in the market place; we must avoid business activities or conduct that would unlawfully restrict or prohibit competition under the applicable laws and regulations."                                           (https://sf16-sg.tiktokcdn.com/obj/eden-sg/upsnuhpevbn/bytedance_official/code_of_conduct.pdf).   That Code of Conduct also states, "Intellectual property is a core value to ByteDance. All ByteDancers and Partners must take appropriate measures to safeguard ByteDance's intellectual property, including without limited to trade secrets, know-how, patents, copyrights, trademarks and source codes." *Id.*   It also states, "If you believe any potential or existing infringement of the intellectual property of ByteDance or any of its creator, you should immediately report to us so that we can take appropriate action timely."  *Id.*

160.    TikTok's "Intellectual Property Policy" states, "We do not allow any content that infringes copyright. The use of copyrighted content of others without proper

authorization or legally valid reason may lead to a violation of TikTok's policies."
https://www.tiktok.com/legal/copyright-policy?lang=en (accessed on July 30, 2021).
TikTok's terms of service also state, "We respect intellectual property rights and ask you
to do the same." (https://www.tiktok.com/legal/terms-of-service?lang=en).

161.    On information and belief, Defendants knowingly with the intent to induce,
enable facilitate, or conceal infringement, provided copyright management information
that is false and/or distributed or imported for distribution copyright information that is
false, and/or intentionally removed or altered Meishe's copyright management information
from the software it copied and distributed for importation copyright management
information knowing that the copyright management information was removed or altered
without Meishe's consent or having reasonable grounds to know that its actions would
induce, enable facilitate, or conceal infringement.

162.    By their conduct described above, Defendants also misrepresented, to its
consumers in the State of Texas and elsewhere, the nature, characteristics of their product
and commercial activities. For example, they have represented that they value intellectual
property and would not infringe others' intellectual property, but have done so as described
in this Complaint, and despite the passage of months since Meishe filed suit in China, on
information and belief Defendants have willfully continued to represent the software as
their own, not credited Meishe with being the owners or author of portions of Defendants'
products or code, and not stopped distributing the infringing and misappropriated code.

163.    Defendants made unauthorized use Plaintiff's copyrighted software and
trade secrets in the State of Texas and elsewhere.

164.    Defendants' misrepresentations were intended, likely, and did in fact

influence purchasing decisions by its consumers in the State of Texas and elsewhere.

165.    The impact of Defendants' false and misleading statements about its ownership of its software affected consumers' purchasing decisions. Consumers of Defendants believed that they were purchasing software lawfully owned by Defendants.

166.    Defendants' misrepresentations and misconduct substantially affected interstate commerce.

167.    As a natural and probable result of Defendants' misconduct, Plaintiff suffered damages in an amount that exceeds jurisdictional requirements of this Court.

### SIXTH CLAIM FOR RELIEF – UNJUST ENRICHMENT UNDER TEXAS LAW

168.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint set as if fully forth herein.

169.    Texas law recognizes claims for unjust enrichment. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

170.    By unlawfully obtaining and integrating Plaintiff's copyrighted software and trade secrets in its own software and providing it to their consumers in the State of Texas, Defendants improperly obtained benefits from Plaintiff's software at Plaintiff's expense.

171.    Defendants acquired the benefits voluntarily and with full knowledge of the benefits.

172.    Defendants retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff the value of the benefits Defendants acquired.

## SEVENTH CLAIM FOR RELIEF – AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY UNDER TEXAS LAW

173.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs of this Complaint set as if fully forth herein.

174.    Texas law recognizes claims for aiding and abetting a breach of fiduciary duty. *Premier Research Labs, LP v. Nurman*, No. A-13-CA-069-SS, 2014 U.S. Dist. LEXIS 31733, at *12 (W.D. Tex. Mar. 12, 2014); *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996).

175.    Plaintiff had a fiduciary relationship with its former employee, Mr. Jing Xie. Specifically, Mr. Jing Xie was an employee at Meishe in a special role that whereby he was given access to Meishe's trade secrets and source code to its products and agreed to act for the benefit of Meishe and to protect and not damage the company by his actions. In that role, Mr. Jing Xie had a relationship of trust and confidence with Plaintiff.

176.    On information and belief, Defendants knew of this fiduciary relationship between Plaintiff and Mr. Jing Xie at least as early as on or about April 30, 2021 when Meishe filed suit against Defendants in China as described above.

177.    On information and belief, Mr. Jing Xie breached his fiduciary duty to Plaintiff within the past four years including by having trade secret code taken from Plaintiff incorporated into other companies' software, including that of Defendants, and providing it to consumers in the State of Texas.

178.    On information and belief, Defendants were aware that they were participating in the breach of that fiduciary relationship as they knew their actions caused Mr. Jing Xie to breach his agreement with Plaintiff, breach his fiduciary obligations to Plaintiff, and steal Plaintiff's trade secret, confidential, copyrighted, and/or proprietary

business information obtained through his employment with Plaintiff.

179.    As a result of the Defendants' conduct, Plaintiff has suffered monetary damages. Furthermore, Mr. Jing Xie and Defendants improperly benefited by the breach of the fiduciary duty and continue to improperly benefit from and damage Plaintiff.

180.    Plaintiff is entitled to actual damages and exemplary damages, for which the Defendants are jointly and severally liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor against Defendants and grant the following relief:

A.    For judgment that Defendants have violated 17 U.S.C. § 501;

B.    For judgment that Defendants have infringed Plaintiff's rights to copyrighted software, registered as Nos. 2015SR227927, 2018SR037751, 2018SR037747, 2018SR038324, 2018SR218096, 2018SR218287, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2019SR0899912, 2019SR0899814, 2019SR0899799, 2019SR0901175, 2019SR0901166, 2020SR0291426, 2020SR0575533, 2020SR0572713, 2020SR0572704;

C.    For judgment that Defendants have misappropriated Plaintiff's trade secrets;

D.    For judgment that Defendants have misappropriated Plaintiff's trade secrets under the Texas Uniform Trade Secrets Act;

E.    For judgment that Defendants have misappropriated Plaintiff's trade secrets under the Defend Trade Secrets Act;

F.    That Defendants be enjoined from further use of misappropriated trade secrets, including but not limited to under Tex. Civ. Prac. & Rem. Code § 134A.003;

G.     That Defendants be enjoined from further use of misappropriated trade secrets, including but not limited to under Tex. Civ. Prac. & Rem. Code § 134A.003;

H.     That Defendants' misappropriation has been willful and that Plaintiff is entitled to exemplary damages and attorneys' fees under the Texas Uniform Trade Secrets Act including but not limited to under Tex. Civ. Prac. & Rem. Code § 134A.002;

I.     For judgment that Defendants are liable for unfair competition including under Texas law;

J.     For judgment that Defendants are liable for violation of the Lanham Act;

K.     For judgment that Defendants are liable for unjust enrichment including in violation of Texas law;

L.     For judgment that Defendants are liable for aiding and abetting a breach of fiduciary duty owed to Plaintiff including in violation of Texas law;

M.     For judgment awarding actual damages and/or Defendants' profits attributable to the wrongful activity to Plaintiff, as the case may be, under 17 U.S.C. § 504, 15 U.S.C. § 1125, as well as any other statutory damages as may be available;

N.     For judgment preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from infringing Plaintiff's copyrights to software identified above;

O.     For judgment that Defendant's violations are willful entitling Plaintiff to an increase in the damages as permitted by 17 U.S.C. § 504 as well as any other basis for increasing damages due to willful infringement;

P.     For full costs including but not limited to attorney fees as permitted by 17 U.S.C. § 505; and

Q.      For judgment awarding such other and further relief to which Plaintiff is entitled or the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action on all issues so triable.

Date: August 10, 2021                                   Respectfully Submitted,

                                                        */s/  J. Mark Mann*
                                                        J. Mark Mann
                                                        State Bar No. 12926150
                                                        mark@themannfirm.com
                                                        G. Blake Thompson
                                                        State Bar no. 24042033
                                                        blake@themannfirm.com
                                                        **Mann | Tindel | Thompson**
                                                        201 E. Howard St.
                                                        Henderson, TX 75654
                                                        Office 903-657-8540

                                                        Korula T. Cherian (*pro hac vice*)
                                                        Robert Harkins (*pro hac vice*)
                                                        **RuyakCherian LLP**
                                                        1936 University Ave., Suite 350
                                                        Berkeley, CA 94702
                                                        Telephone: (510) 944-0190
                                                        sunnyc@ruyakcherian.com
                                                        bobh@ruyakcherian.com

                                                        Thomas Dunham
                                                        **RuyakCherian LLP**
                                                        1901 L St. NW, Suite 700
                                                        Washington, DC 20036
                                                        (202) 838-1560
                                                        tomd@ruyakcherian.com

                                                        *Counsel for Plaintiff Beijing Meishe Network Technology Co., Ltd.*