## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD., | § § § | |
| Plaintiff | § § | |
| v. | § § | NO. 6:21-cv-504-ADA-JCM |
| TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., and BYTEDANCE INC., | § § § § | |
| Defendants. | § § § § | |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................. 2

    A.   Meishe's Chinese-copyrighted video and audio editing software ...................... 2

    B.   The events leading to Meishe's suits in China, and subsequent suit in Texas.................... 3

    C.   Meishe's prior-filed suits in China ..................................................................... 3

III.  LEGAL STANDARD ............................................................................................. 4

IV.   ARGUMENT .......................................................................................................... 4

    A.   Meishe's infringement claim for its purported Chinese-registered copyrights should be dismissed for multiple pleading defects.......................................................................... 4

        1.   Factual copying: Meishe's allegations for 16 Chinese copyrights should be dismissed for failure to plausibly allege access to the alleged works...................................... 5

        2.   Factual copying: Meishe's complaint fails to plead probative similarity between its Chinese copyrights and code in the TikTok app .................................................... 6

        3.   Ownership: Meishe does not sufficiently plead its Chinese copyrights are "foreign works" that are exempt from U.S. pre-suit formalities ............................................ 8

        4.   Meishe's claim under 17 U.S.C. § 1202 should be dismissed..................................... 10

        5.   Meishe's failure to provide reasonable notice of its purported Chinese-registered copyrights fails to meet Rule 8 notice standards ................................................ 11

    B.   Meishe's federal DTSA claim should be dismissed ........................................... 11

        1.   Meishe's trade secret claim is barred by the DTSA's statute of limitations................ 12

        2.   Meishe alleges conduct that is not actionable because it occurred before the DTSA's effective date........................................................................................................... 13

        3.   Meishe fails to allege necessary elements of its DTSA claim under Chinese law ....... 13

        4.   The DTSA may not provide a cause of action for Meishe's claim.............................. 14

    C.   Meishe's Texas tort claims are preempted by its TUTSA claim ...................... 15

    D.   Meishe's TUTSA claim should be dismissed ..................................................... 16

        1.   Meishe's TUTSA claim is barred under the statute of limitations .............................. 16

        2.   Meishe's TUTSA claim should be dismissed for failure to plead a violation under Chinese law............................................................................................................... 16

    E.   Meishe fails to plead a cognizable Lanham Act claim as a matter of law........................ 19

        1.   Meishe's failure to attribute claim is not actionable under the Lanham Act ............... 19

        2.   Meishe fails to plead a plausible claim based on removal or alteration of "copyright management information" under the Lanham Act................................................ 20

V.    CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*,
No. 14-CA-847-SS, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) .........................................16

*AFL Telecomm. LLC v. SurplusEQ.com Inc.*,
946 F. Supp. 2d 928 (D. Ariz. 2013) ....................................................................................10

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
166 F.3d 772 (5th Cir. 1999) .................................................................................................6

*Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*,
No. 05-cv-172-XR, 2005 WL 1862631 (W.D. Tex. July 8, 2005).........................................18

*Armour v. Knowles*,
512 F.3d 147 (5th Cir. 2007) ..............................................................................................4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................4

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
No. 16-cv-3737, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017)................................................13

*Axxiom Mfg., Inc. v. McCoy Invs., Inc.*,
No. 09-cv-3735, 2010 WL 2545584 (S.D. Tex. June 21, 2010).............................................7

*Bailey v. Shell W. E&P, Inc.*,
609 F.3d 710 (5th Cir. 2010) ...............................................................................................18

*Barnhill v. Johnson*,
503 U.S. 393 (1992)..............................................................................................................13

*Barnstormers, Inc. v. Wing Walkers, LLC*,
No. 10-cv-261-KC, 2011 WL 1671641 (W.D. Tex. May 3, 2011) ........................................20

*Batiste v. Lewis*,
976 F.3d 493 (5th Cir. 2020) ..............................................................................................4, 6

*Bureau Veritas Commodities & Trade, Inc. v. Nanoo*,
No. 20-cv-3374, 2021 WL 2142466 (E.D. La. May 26, 2021) ..............................................11

*Busti v. Platinum Studios, Inc.*,
No. 11-cv-1029-SS, 2013 WL 12121116 (W.D. Tex. Aug. 30, 2013).....................................8

*Casa Dimitri Corp. v. Invicta Watch Co.*,
    270 F. Supp. 3d 1340 (S.D. Fla. 2017) ...................................................................10

*Caton v. Leach Corp.*,
    896 F.2d 939 (5th Cir. 1990) ...............................................................................17

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...............................................................................17

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
    710 F.3d 579 (5th Cir. 2013) ...............................................................................18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..............................................................................................20

*DigitAlb, Sh.a v. Setplex, LLC*,
    284 F. Supp. 3d 547 (S.D.N.Y. 2018)......................................................................9

*DynaStudy, Inc. v. Houston Indep. Sch. Dist.*,
    325 F. Supp. 3d 767 (S.D. Tex. 2017) .....................................................................6

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
    No. 17-cv-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018)............................16

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
    26 F.3d 1335 (5th Cir. 1994) .................................................................................4

*In re ENSCO Offshore Int'l Co.*,
    311 S.W.3d 921 (Tex. 2010).................................................................................19

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..............................................................................................7

*Gen. Universal Sys., Inc. v. Lee*,
    379 F.3d 131 (5th Cir. 2004) .....................................................................7, 10, 20

*Getaped.com, Inc. v. Cangemi*,
    188 F. Supp. 2d 398 (S.D.N.Y. 2002).....................................................................10

*Haydell Indus., LLC v. Petrucci*,
    702 F. Supp. 2d 688 (W.D. La. 2010)....................................................................11

*Ironshore Eur. DAC v. Schiff Hardin, LLP*,
    912 F.3d 759 (5th Cir. 2019) ...............................................................................17

*Jacked Up, LLC. v. Sara Lee Corp.*,
    854 F.3d 797 (5th Cir. 2017) ...............................................................................19

*Kernal Recs. Oy v. Mosley*,
794 F. Supp. 2d 1355 (S.D. Fla. 2011) ...................................................................10

*Kernel Recs. Oy v. Mosley*,
694 F.3d 1294 (11th Cir. 2012) .........................................................................8, 9

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995)....................................................................................20

*LMS Commodities DMCC v. Libyan Foreign Bank*,
No. 18-cv-679-RP, 2019 WL 1925499 (W.D. Tex. Apr. 30, 2019) .......................18

*Malibu Media, LLC v. Dhandapani*,
No. 19-cv-1300-M, 2020 WL 6120175 (N.D. Tex. Feb. 12, 2020) .........................9

*Marshall v. McConnell*,
No. 05-cv-1062L, 2006 WL 740081 (N.D. Tex. Mar. 23, 2006) ..........................11

*Morrison v. Nat'l Autstl. Bank Ltd.*,
561 U.S. 247 (2010)...............................................................................................14

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
436 F. Supp. 3d 1150 (N.D. Ill. 2020) ..................................................................14

*Papa Berg, Inc. v. World Wrestling Ent., Inc.*,
No. 12-cv-2406-B, 2013 WL 2090547 (N.D. Tex. May 15, 2013)...........................6

*Quicksilver Res., Inc. v. Eagle Drilling, LLC*,
792 F. Supp. 2d 948 (S.D. Tex. 2011) ...................................................................17

*RAZ Imports, Inc. v. Regency Int'l Bus. Corp.*,
No. 19-cv-1855-E, 2020 WL 4500627 (N.D. Tex. Aug. 5, 2020)..........................10

*Recif Res., LLC v. Juniper Cap. Advisors, LP*,
No. 19-cv-2953, 2020 WL 6748049 (S.D. Tex. Nov. 17, 2020) ............................16

*Republic of the Philippines v. Marcos*,
862 F.2d 1355 (9th Cir. 1988) ..............................................................................14

*RJR Nabisco, Inc. v. Eur. Comty.*,
579 U.S. 325 (2016)...............................................................................................15

*Rodriguez v. FDIC*,
140 S. Ct. 713 (2020).............................................................................................13

*Rucker v. Harlequin Ents., Ltd.*,
No. 12-cv-1135, 2013 WL 707922 (S.D. Tex. Feb. 26, 2013)..................................8

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC,*
   426 F. Supp. 3d 311 (E.D. Tex. 2019) ...................................................................15

*Taylor v. IBM,*
   54 F. App'x 794, 2002 WL 31845220 (5th Cir. Dec. 10, 2002) ...........................7, 8

*Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.,*
   100 F.3d 429 (5th Cir. 1996) ..........................................................................17, 19

*UOP LLC v. Exterran Energy Sols., LP,*
   No. 20-cv-233-DC, 2021 WL 4096560 (W.D. Tex. Aug. 26, 2021) .....................15

*Versata Software, Inc. v. Configit A/S,*
   No. 20-cv-9019-JAK, 2021 WL 5536287 (C.D. Cal. Sept. 10, 2021) ...................12

**Statutes**

17 U.S.C. ...............................................................................................................................9

17 U.S.C. § 101 ...........................................................................................................5, 9, 10

17 U.S.C. § 102(b) ...............................................................................................................8

17 U.S.C. § 411(a) .......................................................................................................8, 9, 10

17 U.S.C. § 501 ...................................................................................................................1

17 U.S.C. § 1202 ..........................................................................................................10, 20

18 U.S.C. § 1836(b)(1) ....................................................................................................1, 13

18 U.S.C. § 1836(d) ...........................................................................................................12

18 U.S.C. § 1837 ...............................................................................................................14

Anti-Unfair Competition Law .............................................................................................14

Copyright Act ..................................................................................................................8, 9

Deceptive Trade Practices Act ...........................................................................................17

Defend Trade Secrets Act of 2016 ............................................................................... *passim*

EEA ...................................................................................................................................14

Lanham Act ...................................................................................................................19, 20

Tex. Civ. Prac. & Rem. Code Ann. § 134A ........................................................................2

Tex. Civ. Prac. & Rem. Code § 16.010 ........................................................................16

Tex. Civ. Prac. & Rem. Code § 134A.007(a) ...............................................................15

Texas Uniform Trade Secret Act ..................................................................................2

TUTSA.................................................................................................... *passim*

## I.   <u>INTRODUCTION</u>

This is a case brought by a Chinese company with no physical presence in the U.S., asserting infringement of Chinese-registered copyrights and misappropriation of Chinese trade secrets in those copyrights, where the copyrights (and alleged trade secrets) are ***not*** attached to the complaint, ***not*** registered in the U.S., and ***not*** accessible from the Chinese copyright office. The key claims in this dispute over Chinese intellectual property are already the subject of multiple prior suits before Chinese courts. In this later-filed U.S. suit, the plaintiff Beijing Meishe Network Technology Co., Ltd. ("Meishe") improperly relies on U.S. courts and laws by asserting vague and untimely claims governed by Chinese law on alleged activities and injuries in China. Meishe has no alleged physical presence or specific business interests in the U.S.

As discussed in a forthcoming stay motion under the doctrine of international abstention, Meishe's complaint reflects this discordant attempt by a foreign company to wield U.S. courts as a weapon against overseas conduct governed by overseas law. It claims entitlement to damages and injunctive relief under U.S. laws, despite providing no reasonable notice of the alleged intellectual property underlying its complaint and no particular allegations of harm in the U.S.— much less Texas. Even if the interests of justice weighed in favor of this later-filed parallel suit moving forward, Meishe's complaint suffers numerous defects that result from its bold attempt to force a Chinese dispute into a Texas court, under the wrong law. Defendants request dismissal of the following claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure:[1]

- Meishe's Berne Convention copyright claim under 17 U.S.C. § 501 for 17 Chinese copyrights—which it does not attach and ***cannot be accessed*** by Defendants—should be dismissed for failure to meet even the permissive notice pleading standards of Rule 8(a);
- Meishe's Defend Trade Secrets Act claim under 18 U.S.C. § 1836(b)(1) ("DTSA") should be dismissed (1) for failure to bring a claim within the statute of limitations; (2) for failure to provide notice of the trade secrets allegedly misappropriated; and (3)

---

[1] Defendants dispute that general and specific personal jurisdiction in W.D. Tex. is proper. For purposes of this motion only, Defendants do not contest personal jurisdiction in this district.

because the alleged acts occurred before the DTSA's effective date;

- Meishe's Texas tort claims (unfair competition by misappropriation, unjust enrichment, and breach of fiduciary duty) are preempted due to its assertion of a Texas Uniform Trade Secret Act claim under Tex. Civ. Prac. & Rem. Code Ann. § 134A ("TUTSA");

- Meishe's TUTSA tort claim should be dismissed—as well as its preempted Texas tort claims—for Meishe's failure to bring a claim within the statute of limitations and failure to plead an actionable violation under Chinese law; and

- Meishe's Lanham Act claim that TikTok should attribute Meishe as author of the TikTok app is a false attribution claim that has been foreclosed by the Supreme Court.

In sum, Meishe's complaint should be dismissed under Rule 12(b)(6) for deficiencies in the what, when, and why. Meishe fails to provide notice of the Chinese copyrights Defendants are accused of infringing (the what), failed to plead its trade secret claims within the relevant statute of limitations and effective dates (the when), and fails to plead its tort-related claims under the Chinese law that should be applied to the dispute (the why).

## II.   FACTUAL BACKGROUND

### A.  Meishe's Chinese-copyrighted video and audio editing software

Plaintiff Beijing Meishe is a company "formed under the laws of the People's Republic of China," and consistent with its name, has a principal place of business in Beijing, China. (Dkt. 7-1, Second Amended Complaint ("SAC") ¶ 10.) According to Meishe, it is a "service provider" in the video and audio field. (SAC ¶ 3.) Its customers are in "industries such as mobile APP, smart phones, smart hardware, radio and television, and communication operators," and include "OPPO, Xiaomi, Bilibili, State Grid, People's Video, [and] Huya." (*Id.*)

Meishe allegedly developed the "Meishe app," which it describes as software for "video and audio editing processing." (SAC ¶ 53.) Meishe allegedly registered "'Meishe 1.0' and some of its updates with the Copyright Protection Centre of China (CPCC)."[2] Meishe alleges it registered Copyright No. 2015SR227927 for Meishe v1.0 on Sept. 27, 2014, and sixteen other Chinese copyrights for "updated versions" between 2017 and 2020. (*Id.* ¶¶ 54, 71.) Meishe does

---

[2] Meishe alleges it developed a "Meishe SDK," but does not assert copyrights on it. (SAC ¶ 54.)

not allege it has any U.S. copyrights on its Meishe app. Meishe did not include its Chinese copyrights with the complaint; nor are they publicly available at the Chinese copyright office.

### B.  The events leading to Meishe's suits in China, and subsequent suit in Texas

Meishe's allegation that "Defendants [had] access to Meishe's source code"—a necessary element of its claims—hinges on Meishe's former employee Jing Xie. (*Id.* ¶ 58.) Meishe alleges Mr. Xie began employment at Meishe affiliate Xin Ao-Te in China in 2007 and then at Meishe in 2015. (*Id.* ¶ 60.) Meishe alleges Mr. Xie was involved in developing Meishe v1.0 and upgrades to "various versions" of the software until his resignation around June 8, 2015. (*Id.* ¶¶ 60, 62.)

Under its employment contract with Mr. Xie and its "company policy," Meishe alleges that Mr. Xie was "prohibited from improper acquisition, use, or disclosure of its trade secrets, proprietary software codes." (*Id.* ¶¶ 96, 101.) Meishe alleges that around June 3, 2015, Mr. Xie "accessed" and "illegally" took Meishe's "trade secret and copyrighted computer code when he left the company" on June 8, 2015, in violation of his employment contract. (*Id.* ¶¶ 63, 95, 97.)

Meishe concedes that Mr. Xie did not begin employment at Beijing ByteDance Technology Co., Ltd. in China until more than two years later, on October 2017. (*Id.* ¶¶ 65, 99–100.) Nor does Meishe allege that ByteDance contacted Mr. Xie while he was at Meishe.

### C.  Meishe's prior-filed suits in China

Meishe alleges that in March 2021 it "audited" Mr. Xie's activities during his employment, discovering he "downloaded Meishe's source code." (*Id.* ¶ 102.) Meishe alleges its "SVN system" code repository created logs of all "relevant operations" each time Mr. Xie "check[ed] out" Meishe's source code during his employment. (*Id.* ¶ 61.) Meishe alleges, these logs "prove that Mr. Jing Xie accessed Meishe's source code and downloaded the source code." (*Id.*) The logs appear to be located in China at Meishe's offices in Beijing. (*Id.* ¶ 10.)

On April 30, 2021, Meishe filed lawsuits against ByteDance in China. (*Id.* ¶ 80.) Meishe

alleges copyright infringement by "a series of apps belonging to ByteDance" beginning in 2018 (*id.* ¶¶ 56, 62, 99), including Douyin v3.0, released on Nov. 1, 2018 in China (*id.* ¶ 80). Meishe also alleges trade secret misappropriation "relating to ByteDance's Douyin app." (*Id.*) However, Meishe did not bring suit until May 2021, more than three years after the alleged infringement, almost six years after Mr. Xie left Meishe and almost four years after Mr. Xie joined ByteDance.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court need not accept legal conclusions couched as factual allegations. *Id.* A pleading relying on "labels and conclusions" is insufficient, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## IV.   ARGUMENT

### A.   Meishe's infringement claim for its purported Chinese-registered copyrights should be dismissed for multiple pleading defects

To state a claim for copyright infringement, the plaintiff must allege three elements: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). For the second element—"factual copying"—Meishe alleges "actionable" copying based on Mr. Xie's access to Meishe's source code (SAC ¶ 58) and alleged similarity (*id.* ¶ 57). *See Batiste v. Lewis,* 976 F.3d 493, 502 (5th Cir. 2020) ("[A] plaintiff can raise an inference of

factual copying from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." (quotations omitted)).

Meishe asserts infringement of its Chinese-registered copyrights under 17 U.S.C. § 101. Meishe has not registered its asserted copyrights in the U.S., nor has Meishe attached its copyrights or the source code for its Meishe v1.0 app that allegedly contains its Chinese copyrights to the complaint. Defendants *cannot* access Meishe's copyrights through the Chinese copyright office, nor has Meishe alleged such access is possible. Meishe could have attached its Chinese copyrights or Meishe v1.0 app source code to the complaint under seal, for example, pursuant to Local Rule CV-5.2. Meishe's calculated decision to withhold the Chinese intellectual property foundational to its claim should not excuse the legal deficiencies that result.

1.     Factual copying: Meishe's allegations for 16 Chinese copyrights should be dismissed for failure to plausibly allege access to the alleged works

To show the necessary access supporting its copyright infringement claim, Meishe must plead plausible allegations that "the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work before creating the infringing work." *See Armour*, 512 F.3d at 152–53 (5th Cir. 2007). As a threshold issue, Meishe's claims for 16 of the 17 asserted Chinese copyrights should be dismissed because Meishe has not made plausible allegations that any Defendant had access through Mr. Xie to any but the earliest of Meishe's purported Chinese copyrights, 2015SR227927. (SAC ¶ 71.)

Meishe alleges that Mr. Xie worked on Meishe v1.0 and any upgrades until his resignation on June 8, 2015. (*Id.* ¶ 60.) The only Chinese-registered copyright published before Mr. Xie left Meishe is 2015SR227927, which Meishe alleges has a "date[] of publication of the registration" of September 27, 2014. (*Id.* ¶¶ 71–72.) The next earliest "date[] of publication of the registration" of the identified Chinese copyrights is June 5, 2017, more than two years *after*

Mr. Xie left Meishe. Because Meishe concedes that "Defendants' access to Meishe's source code came through Meishe's former employee, Mr. Jing Xie" (*id.* ¶ 58), Meishe provides no plausible allegation that Defendants had access to any of the other purported Chinese copyrights.

Further, Meishe alleges no basis to impute Mr. Xie's alleged access to Meishe's source code in China to the TikTok app in the U.S. Exhibits to Meishe's complaint make clear: "TikTok is not offered in China, where ByteDance operates a similar but separate video-sharing platform called Douyin." (*Id.*, Ex. B at 8 ¶ 20); *id.*, Ex. D at 2 ¶ 4 ("Neither version of TikTok is offered in China, where ByteDance operates a similar but separate video-sharing platform called Douyin.").[3] Meishe's claims tied to at least these 16 Chinese copyrights should be dismissed.

2.     Factual copying: Meishe's complaint fails to plead probative similarity between its Chinese copyrights and code in the TikTok app

Meishe's complaint also fails to plead probative similarity between ***all*** its purported Chinese copyrights and the TikTok app source code. *See Batiste*, 976 F.3d at 502 ("[A] plaintiff can't establish factual copying 'without some showing of probative similarity.'" (citation omitted)). As it has not provided reasonable access to the Chinese copyrights, Meishe's allegations of substantial similarity amount to the bare allegation that a comparison of decompiled source code in Meishe v2.5.4 and TikTok v8.5 suggests that "the code used to implement video and audio editing functions in the two apps is highly similar." (SAC ¶¶ 56–57.)

---

[3] In addition, to the extent Defendants can discern Meishe's allegations, Meishe fails to plead a cognizable claim of contributory copyright infringement—that Defendants, "with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to infringing conduct of another." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Instead, Meishe offers bare legal conclusions, and fails to allege any infringing conduct of TikTok app users. (SAC ¶¶ 76, 78.) This is insufficient to state a cognizable claim. *See DynaStudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 776–77 (S.D. Tex. 2017) ("[C]onclusory allegations that 'Defendant induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and/or assisting others ... to unlawfully reproduce and/or distribute [Plaintiff's] Copyrighted Works' and that 'Defendant had knowledge of the infringing acts' are insufficient to state a claim."); *Papa Berg, Inc. v. World Wrestling Ent., Inc.*, No. 12-cv-2406-B, 2013 WL 2090547, at *11 (N.D. Tex. May 15, 2013) (similar).

However, even if Meishe's allegation were true, "[n]ot all copying . . . is copyright infringement." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiffs must establish "copying of constituent elements of the work that are ***original***." *Id.* (emphasis added) Put another way, Meishe must plausibly allege "copying is legally actionable by showing that the allegedly infringing work is substantially similar to ***protectable elements of the infringed work***." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (emphasis added). Because Meishe did not attach its Chinese copyrights to the complaint and Defendants cannot reasonably access them, Meishe fails to meet its burden to plead that code in the TikTok app is substantially similar to ***protectable elements*** of Meishe's purported Chinese-registered copyrights.

In particular, Meishe's functional identification of "code used to implement video and audio editing" provides no notice about the allegedly infringing code in the TikTok app. (SAC ¶¶ 56–57.) The generic description of the concept of video and audio editing functionality does not narrow the scope of Meishe's allegations in a meaningful way. As a result, Defendants cannot evaluate whether Meishe's purported Chinese copyrights contain protectable elements or whether there are substantial similarities in any protectable elements with the TikTok app code. *See Taylor v. IBM*, 54 F. App'x 794, 2002 WL 31845220, at *1 (5th Cir. Dec. 10, 2002) (Rule 12 dismissal warranted where plaintiff "failed to show that any allegedly copied text was copyrightable"); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, No. 09-cv-3735, 2010 WL 2545584, at *5 (S.D. Tex. June 21, 2010) ("A court must distinguish between the protectable and unprotectable material because a party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements" (quotations omitted)).

Meishe further highlights its pleading defects by its functional characterization of the alleged copyrighted code: it is "used to implement video and audio editing functions" (SAC ¶ 56;

*see id.* at ¶¶ 53, 80 (similar)). These descriptions of Meishe's alleged code reflect processes, concepts, and ideas, not expressions of originality. *See Rucker v. Harlequin Ents., Ltd.*, No. 12-cv-1135, 2013 WL 707922, at *5 (S.D. Tex. Feb. 26, 2013) ("Copyright law does not protect an idea but only 'the expression of an idea.'"); *Busti v. Platinum Studios, Inc.*, No. 11-cv-1029-SS, 2013 WL 12121116, at *6 (W.D. Tex. Aug. 30, 2013) (similar); 17 U.S.C. § 102(b). Such code would be *unprotectable* as a matter of law. *See Taylor*, 54 F. App'x at 794 ("where all that has been copied is plaintiffs' idea, there is no copyright infringement").

Meishe's vague allegations about its alleged copyrighted work are mirrored by vague allegations about TikTok's allegedly similar source code. For example, Meishe does not identify any source code in the TikTok app beyond broad, functional descriptions. While Meishe alleges that it compared Meishe *v2.5.4* to TikTok v8.5, Meishe alleges its Chinese copyrights cover only Meishe *v1.0* and "some of its updates." (SAC ¶¶ 54, 57.) Meishe does not allege its Chinese copyrights cover Meishe v2.5.4, nor does Meishe allege that v2.5.4 bears any relevant similarity to the only work Meishe attempts to connect to its purported Chinese copyrights—Meishe v1.0. Meishe's vague allegations about both its own code and TikTok's fails to raise a plausible inference of actionable copying.

           3.    <u>Ownership: Meishe does not sufficiently plead its Chinese copyrights are "foreign works" that are exempt from U.S. pre-suit formalities</u>

Meishe alleges its copyrights are "foreign works" under the Copyright Act (*id.* ¶ 70), and thus it is exempt from 17 U.S.C. § 411(a), which mandates that plaintiffs must first register copyrights *in the U.S.* before initiating copyright suits here. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012). However, Meishe's bare conclusion is insufficient to plead ownership of a foreign copyright exempt from U.S. statutory pre-suit registration requirements because Meishe does not sufficiently allege foreign *publication* of its Chinese copyrights.

A plaintiff alleging that it is exempt from § 411(a) "must allege that the works are not United States works within the meaning of [17 U.S.C.] § 101." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018). To do so, a plaintiff must plausibly allege its work was "published" in a foreign country, and "the publication was, in fact, the first publication, and that the geographic extent of this first publication diverges from the statutory definition of a 'United States work.'" *See Kernel*, 694 F.3d at 1305. Importantly, even if the alleged work was published in a foreign country, it may still fall under § 101's definition of a "United States work" if it was available *simultaneously* in other countries. Works available on "public websites on the World Wide Web" carry "a presumption of simultaneous worldwide availability." *Kernel*, 694 F.3d at 1306. Such works would be considered "first published in the United States and a treaty party whose law grants a term of copyright protection longer than the United States, making the work a United States work that *is* subject to the registration requirement" under §§ 101 and 411(a). *Id.* at 1304 (emphasis original).

Thus, even if the Meishe v1.0 app were created and published in China, Meishe must sufficiently plead that Meishe v1.0 was first published *solely* in China. Instead, Meishe provides a bare legal conclusion that "Meishe's Copyrighted Works are foreign works as defined by the Copyright Act," but alleges only "publication of [its copyright] *registration[s]*," not publication of the *copyrighted work itself*. (SAC ¶¶ 70–71 (emphasis added).) As to the actual work—Meishe v1.0—Meishe fails to allege publication. But publication and registration are *not* interchangeable and both must be pled to establish ownership. *Cf. Malibu Media, LLC v. Dhandapani*, No. 19-cv-1300-M, 2020 WL 6120175, at *2 (N.D. Tex. Feb. 12, 2020) (plaintiff "sufficiently pleaded [copyright] ownership" by "providing the copyright registration numbers, the effective dates of those registrations, *and* the dates of first publication" (emphasis added)).

Thus, if Meishe v1.0 was first published on the Internet without access restrictions—such as through Android or Apple app stores—it would be considered a U.S., not foreign work under § 101—and Meishe's suit would be subject to § 411's prerequisites. *See Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) (work 'published' when it "goes live on the Internet"). The *Kernel* district court noted, "If Congress had intended to exclude works published on the Internet from the definitions of 'United States work' or 'publication' in § 101, it easily could have done so." *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1366 (S.D. Fla. 2011).

In short, Meishe must comply with § 411(a)—pre-registration of its copyrights *with the U.S. copyright office*—before it can bring suit. Because Meishe has not registered any copyrights in the U.S., its infringement claim must be dismissed. *See Casa Dimitri Corp. v. Invicta Watch Co.*, 270 F. Supp. 3d 1340, 1349 (S.D. Fla. 2017); *AFL Telecomm. LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 940 (D. Ariz. 2013).

4.   Meishe's claim under 17 U.S.C. § 1202 should be dismissed

Meishe also alleges that Defendants have violated 17 U.S.C. § 1202 through conclusory allegations that Defendants provided copyright management information ("CMI") "that is false" or "removed or altered Meishe's" CMI. (SAC ¶ 78.) Meishe provides no explanation of *what* CMI was on Meishe's software or more than bare assertions it was "removed or altered." Without the Chinese-registered copyrights, this claim rests on conclusory allegations, which do not plausibly allege a § 1202 violation. *See RAZ Imports, Inc. v. Regency Int'l Bus. Corp.*, No. 19-cv-1855-E, 2020 WL 4500627, at *3 (N.D. Tex. Aug. 5, 2020) (no § 1202 violation where allegedly "false CMI" targeted products "generated by [defendant] as opposed to the [plaintiff]").[4]

---

[4] Meishe has not made plausible allegations that its purported Chinese-registered copyrights cover any nonliteral elements such as screen displays. *See Gen. Universal*, 379 F.3d at 142. To the extent Meishe asserts copyright infringement of nonliteral elements (*e.g.*, Defendant infringes by "displaying" the TikTok app (SAC ¶¶ 76, 78)), this claim should be dismissed.

5.      Meishe's failure to provide reasonable notice of its purported Chinese-registered copyrights fails to meet Rule 8 notice standards

Meishe's failure to provide access to either the allegedly copyrighted material or the purported Chinese copyrights—beyond resulting in failing to plead multiple elements of an actionable copyright claim—has been found to fail Rule 8 notice requirements in this Circuit. For example, in *Marshall v. McConnell*, No. 05-cv-1062L, 2006 WL 740081, at *4 (N.D. Tex. Mar. 23, 2006), the court found a plaintiff did not meet its Rule 8 burden where it did not attach the allegedly infringed copyrights, but merely provided a "broad reference to 'certain legal treatises and forms,'" authored by the Plaintiff, which was "inadequate to give [Defendants] notice of the documents they purportedly infringed." *See also Haydell Indus., LLC v. Petrucci*, 702 F. Supp. 2d 688, 697 (W.D. La. 2010) (complaint deficient where it "does not allege which information plaintiff has registered copyrights to . . . or which copyrighted information the [] defendants are using without plaintiffs' permission").

**B.      Meishe's federal DTSA claim should be dismissed**

Meishe's federal DTSA trade secret claim hinges on its Chinese copyrights. (*See* SAC ¶ 98 (alleging Mr. Xie "knowingly took ***copyrighted and trade secret Meishe code***" (emphasis added).) Meishe's trade secret claim therefore suffers the same underlying defect as its copyright claim—because Meishe has not attached its Chinese copyrights and Defendants cannot access them, Defendants have no notice of what Meishe's trade secrets are. Meishe's allegation that its trade secrets are in "software codes that allow for video and audio editing, video and audio processing, video and audio release, personalized audio and video recommendations, webcasting, and other services" (*id.* ¶ 88) provides no basis to distinguish this broad functionality from generally available knowledge in the industry. *See Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. 20-cv-3374, 2021 WL 2142466, at *6 (E.D. La. May 26, 2021) (granting motion to dismiss where plaintiff alleged trade secrets in "equipment lists, laboratory designs, and testing

processes," which was insufficient to show "information [wa]s distinct from generally available knowledge," or from that "specialist[s] in the [relevant] industry would know").

          1.    <u>Meishe's trade secret claim is barred by the DTSA's statute of limitations</u>

A more fundamental flaw is that Meishe fails to demonstrate its claim is not barred by the DTSA's statute of limitations, which prohibits claims brought "later than 3 years after the date on which the misappropriation . . . by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). Meishe concedes that Mr. Xie left Meishe on June 8, 2015 and joined ByteDance in October 2017. (SAC ¶¶ 97, 99.) Meishe alleges that Mr. Xie accessed and downloaded Meishe source code on June 3, 2015. (*Id.* ¶ 102.) Meishe also concedes that the TikTok "APK file can be obtained from ***public*** channels." (*Id.* ¶ 57 (emphasis added).)

Despite Meishe's admission that the TikTok source code it allegedly evaluated "can be obtained from public channels" (*id.*), that TikTok is "a mobile software application that 100 million Americans use" (*id.* ¶ 18), and that the Douyin app has "gained hundreds of millions of users and have been downloaded billions of times" in China, Meishe offers no explanation for how the exercise of reasonable diligence could excuse a nearly six-year gap from Mr. Xie's alleged download of source code—or even a three-and-a-half-year gap from Mr. Xie joining Beijing ByteDance—and Meishe's filing of its DTSA claim. Further, Meishe's complaint avoids specific identification of the first accused version of the TikTok app, instead alleging "a series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018" (*id.* ¶ 56)—potentially more than three years before it filed its DTSA claim. In view of the above, Meishe's complaint fails to excuse its delay in bringing suit given the statute's requirement for the "exercise of reasonable diligence." *See Versata Software, Inc. v. Configit A/S*, No. 20-cv-9019-JAK, 2021 WL 5536287, at *7 (C.D. Cal. Sept. 10, 2021) (courts "recognize the application of constructive notice in considering the timeliness of a filing" for DTSA claims).

2.     Meishe alleges conduct that is not actionable because it occurred before the DTSA's effective date

The DTSA applies to acts that "occur[] on or after the date of the enactment of [the] Act." Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376. The effective date of the DTSA is May 11, 2016. *Id.* Meishe concedes that the alleged misappropriation by Mr. Xie occurred on June 3, 2015, ***before*** the DTSA's effective date. (SAC ¶¶ 95, 102.) Meishe does not allege Mr. Xie had access to or acquired additional purported trade secrets after he left Meishe in June 2015. And Meishe only Defendants had access to its alleged trade secrets through Mr. Xie. (*Id.* ¶¶ 58, 104.) Thus, Meishe's allegations are limited to acts taken and information acquired before the DTSA's effective date. This pre-DTSA conduct is not actionable. *See Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-cv-3737, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) ("Because [Plaintiff] has failed to allege any facts showing that acts of misappropriation occurred after DTSA came into effect, its DTSA claim fails on the pleadings.").

3.     Meishe fails to allege necessary elements of its DTSA claim under Chinese law

Meishe's DTSA claim also should be dismissed because it has failed to allege necessary elements under the applicable Chinese law. To bring an action under the DTSA, Meishe must allege it is the "owner" of the trade secret, 18 U.S.C. § 1836(b)(1), meaning it is "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed," *id*. § 1839(4). Because the DTSA does not specify how such title is reposed, principles of federal common law point to incorporation of local law to make this determination—here, China law. *See Rodriguez v. FDIC*, 140 S. Ct. 713, 718 (2020) (state law should decide how to divide federal tax refund); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."). In China, ownership of the alleged trade secrets is governed by Mr. Xie's employment contracts

with Meishe and previous employers, and Chinese law. Dkt. 29-1 (Decl. of Pan Zhicheng, or ("Pan Decl.")) ¶ 52. Meishe has not plausibly pled ownership under this framework.

In addition, Meishe must also allege either that its purported trade secret was acquired through "theft" (implying Meishe's title to it), *see id*. § 1839(6)(A), or that the allegedly culpable actor had a duty to maintain secrecy, *id*. §§ 1839(5)(B)(ii)(II)-(III), (6)(A). Federal courts have found elements in similar federal statutes should rely on local law as well. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988) (RICO claim may require resolution of "questions of Philippine law in determining whether a given act was legal or illegal"). Here, the determination hinges on interpretation of Mr. Xie's employment contract and the Anti-Unfair Competition Law by Chinese courts. (Pan Decl. ¶¶ 53–54, 58, 61, Ex. C). Meishe has failed to plead a claim under the relevant Chinese laws.

4.      The DTSA may not provide a cause of action for Meishe's claim

Congress enacted the DTSA in 2016 under the 1996 Economic Espionage Act ("EEA"). While the EEA "applies to conduct occurring outside the United States," 18 U.S.C. § 1837, it remains an open question whether the DTSA provides a cause of action for injuries to a foreign entity that result from entirely foreign conduct.[5] While the court in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1155–63 (N.D. Ill. 2020)—the first decision to analyze this issue in depth—concluded that the DTSA could apply to extraterritorial "conduct," it did not consider whether the scope of "conduct" encompasses the other predicates required to bring a private action such as ownership, lack of consent, duty of secrecy, and trade secret status. *See* §§ 1836(b)(1), 1839(4)–(6). These requirements are governed by Chinese law here.

If in doubt, a statute must be presumed not to apply abroad. *See Morrison v. Nat'l Austl.*

---

[5] Section 1837's references to "offender" and "offense" make clear that Congress had the criminal, not the later-enacted civil provisions in mind. *See Offender*, Black's Law Dictionary (11th ed. 2019) ("offender": "someone who has committed a crime").

*Bank Ltd.*, 561 U.S. 247, 266, 268 n.10 (2010); *RJR Nabisco, Inc. v. Eur. Comty.*, 579 U.S. 325, 335 (2016) ("Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."). "It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries." *RJR Nabisco*, 579 U.S. at 350. Congress must clearly indicate the provision itself applies extra-territorially. *Id*. It has not done so in the DTSA. If there is no such expression, a plaintiff must allege *domestic* conduct that was the "'focus' of congressional concern" in enacting the statute. *Id*. at 336 (quotation omitted).[6] Without such an allegation, as here, there is no cognizable action.

## C.   Meishe's Texas tort claims are preempted by its TUTSA claim

The TUTSA includes an express preemption provision. Tex. Civ. Prac. & Rem. Code § 134A.007(a) (TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"). Claims occurring after Sept. 1, 2013 that are "based on a misappropriation of a trade secret, [are] preempted by the [TUTSA]." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333–34 (E.D. Tex. 2019) (citations omitted). Here Meishe's fourth, sixth, and seventh claims for unfair competition by misappropriation of trade secrets, unjust enrichment, and breach of fiduciary duty under Texas law (SAC ¶¶ 146–56, 168–80) are preempted by its TUTSA claim.

Meishe's unfair competition claim relies on alleged misappropriation of trade secrets. (*See id.* ¶ 154 ("Defendants' use of Plaintiff's trade secrets through [their] employment of Mr. Jing Xie ... provided Defendants with a special advantage.").) Thus, this claim is preempted by TUTSA. *See UOP LLC v. Exterran Energy Sols., LP*, No. 20-cv-233-DC, 2021 WL 4096560, at

---

[6] the DTSA's legislative history shows that trade secrets owned by domestic companies were Congress's primary concern. *See* H.R. Rep. No. 114-529, at 3-4, 6 (2016); S. Rep. No. 114-220, at 1-2 (2016). Later bills have proposed amending the DTSA to apply abroad—reflecting Congress' view it does not currently do so. *See, e.g.*, H.R. 4327, 117th Cong. § 2 (2021); H.R. 4792, 117th Cong. § 813 (2021); S. 1245, 117th Cong. § 202 (2021).

*7 (W.D. Tex. Aug. 26, 2021) (unfair competition preempted by TUTSA when "based on ... unauthorized use of information—trade secret or not").

Similarly, Meishe's unjust enrichment claim relies on alleged misappropriation. (*See* SAC ¶ 170 ("By unlawfully obtaining and integrating Plaintiff's copyrighted software and trade secrets . . . Defendants improperly obtained benefits from Plaintiff's software.").) This claim is also preempted. *See Recif Res., LLC v. Juniper Cap. Advisors, LP*, No. 19-cv-2953, 2020 WL 6748049, at *14 (S.D. Tex. Nov. 17, 2020) (unjust enrichment preempted); *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 14-CA-847-SS, 2016 WL 900577, at *6–7 (W.D. Tex. Mar. 2, 2016) (TUTSA "intended to . . . eliminat[e] alternative theories of common law recovery which are premised on the misappropriation of a trade secret").

Meishe's breach of fiduciary duty claim also relies on the alleged misappropriation. (*See* SAC ¶ 178 (Defendants caused Mr. Xie to "breach his fiduciary obligations to Plaintiff, and steal Plaintiff's trade secret, confidential, copyrighted, and/or proprietary, business information obtained through his employment with Plaintiff").)[7] Therefore, this claim is also preempted. *See Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 17-cv-444-RP, 2018 WL 315753, at *4 (W.D. Tex. Jan. 5, 2018) (breach of fiduciary claim preempted by TUTSA).

### D.   Meishe's TUTSA claim should be dismissed

#### 1.   Meishe's TUTSA claim is barred under the statute of limitations

The statute of limitations for TUTSA claims is three years. Tex. Civ. Prac. & Rem. Code § 16.010. Thus, like its DTSA claim, Meishe's TUTSA claim is also time-barred.

#### 2.   Meishe's TUTSA claim should be dismissed for failure to plead a violation under Chinese law

---

[7] Meishe's allegation that Defendants are liable under *Texas* law for breach of fiduciary duty between a Chinese citizen and his Chinese employer governed by a Chinese employment contract (SAC ¶ 96), highlights both the absurdity of Meishe's invocation of Texas law and the compelling rationale supporting stay of this case in favor of prior-filed actions in China that address effectively the same issues under Chinese law.

Further, Meishe's TUTSA claim relies on alleged misappropriation governed by a China choice-of-law provision in Mr. Xie's employment contract with Meishe. Meishe has not pled an actionable TUTSA violation under Chinese law, and thus its TUTSA claim—along with its other tort claims relying on the alleged conduct—should be dismissed. *See Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 432 (5th Cir. 1996) (dismissing Deceptive Trade Practices Act claim for failure to plead applicable law under choice-of-law analysis).

The basis of Meishe's TUTSA claim is "wrongful" and "improper" acquisition of Meishe's software source code as a result of an alleged violation of Mr. Xie's "employment agreement with Meishe, and as part of Meishe's company policy, [where] Mr. Jing Xie was prohibited from improper acquisition, use, or disclosure of its trade secrets, proprietary software codes, and/or other confidential information for any purpose." (SAC ¶ 127.) Mr. Xie's employment contract with Meishe at the time of the alleged "improper acquisition" mandates that Chinese law apply to Meishe's claim. *See* Pan Decl. ¶¶ 48–51, Ex. D at 25–27.[8]

Texas law generally gives effect to contractual choice-of-law provisions. *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011). To interpret these provisions, Texas has adopted § 187 of the Restatement (Second) of Conflict of Laws, which "give effect to choice of law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental [state] policy." *See Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990)). Here, Meishe cannot

---

[8] Mr. Xie's employment contract with Meishe is properly considered, as it is referenced in the complaint and central to Meishe's claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Ironshore Eur. DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019) (on Rule 12 courts can consider documents "central to the claim and referenced by the complaint").

dispute that the choice-of-law has a reasonable relationship to the parties and chosen state given its filing of actions in China against ByteDance subsidiaries and Mr. Xie based on alleged violations of that contract. (*See* SAC ¶ 80.) Further, because of Meishe's reliance on the contract in its claims against Defendants, Defendants may enforce provisions in it, even as non-signatories. *Cf. Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. 05-cv-172-XR, 2005 WL 1862631, at *15 (W.D. Tex. July 8, 2005) (non-signatories can enforce forum selection clause when "signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory"); *see* Pan Decl. ¶ 51 (similar under Chinese law).

And even if there were no choice-of-law provision in Mr. Xie's employment contract, because Chinese trade secret law and TUTSA "conflict in areas relevant to [the plaintiff's] claims," a choice of law analysis would be necessary. *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 723–24 (5th Cir. 2010). In particular, under the applicable Chinese law, whether Mr. Xie's conduct was improper would be governed by his employment contract with Meishe and generally recognized business ethics in China at the relevant timeframe, not by TUTSA's definition under Sec. 134A.002(2) or (3). Pan Decl. ¶¶ 53, 58, n.12.[9] Further, whether Mr. Xie's misappropriation can be imputed to Defendants hinges on whether Defendants had actual knowledge or should have known of the alleged misappropriation under Chinese statutory law, not Texas common law. *See id.* ¶¶ 53, 61. In addition, whether the alleged misappropriated information qualifies as a trade secret under Chinese law requires a different inquiry than the six-factor test in Texas (*see Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579,

---

[9] Whether Chinese law applies to Meishe's TUTSA claim is a legal question that can be addressed on Rule 12(b)(6). *See* Fed. R. Civ. P. 44.1. Evidence like expert testimony is "properly considered when determining foreign law for purposes of deciding a 12(b)(6) motion." *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 18-cv-679-RP, 2019 WL 1925499, *3 (W.D. Tex. Apr. 30, 2019) (quoting *de Fontbrune v. Wofsy*, 838 F.3d 992, 996–1000 (9th Cir. 2016)).

583 (5th Cir. 2013)). *See* Pan Decl. ¶¶ 53–54, 59–60, Ex. C.

Given the actual conflict, the Fifth Circuit applies the "most significant relationship" test to determine what law should apply to Meishe's TUTSA claim. *Jacked Up, LLC. v. Sara Lee Corp.*, 854 F.3d 797, 815 (5th Cir. 2017). In tort cases, the "most significant relationship" test factors are: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, nationality, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 928 (Tex. 2010). Under this analysis, Chinese law should apply to Meishe's TUTSA claim. For (1) and (2), Meishe concedes the alleged primary act of misappropriation took place in China at Meishe's offices in Beijing and Mr. Xie's employment at Beijing ByteDance. (SAC ¶¶ 120–32.) For (3) and (4), Meishe and ByteDance are Chinese companies with business relationships centered in China. (SAC ¶¶ 10, 16, 53–54, 80, 127, 129.)

Meishe's TUTSA claim—along with the Texas torts preempted by this claim—should be dismissed for failure to plead a violation under applicable Chinese law. *See Thompson*, 100 F.3d at 432. This deficiency highlights the considerations favoring stay of this case under international abstention to allow Chinese courts to determine how disputes governed by Chinese employment contracts between Chinese companies and their employees should be interpreted.

### E.      Meishe fails to plead a cognizable Lanham Act claim as a matter of law

Meishe's Lanham Act false advertising claim asserts: (1) allegedly "false and misleading statements about [Defendants'] ownership of its software" by failing to "represent the software as their own, not credit[ing] Meishe with being the owners or author of portions of Defendants' products or code" and (2) alleged removal of CMI from source code. (SAC ¶¶ 161, 164–65.) The alleged conduct is not actionable under the Lanham Act and this claim should be dismissed.

1.      <u>Meishe's failure to attribute claim is not actionable under the Lanham Act</u>

Meishe's claim that Defendants have failed to attribute authorship of the TikTok app to Meishe is barred as a matter of law because the Lanham Act was not intended to "prevent[] the unaccredited copying of a work." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 25, 37 (2003). Under *Dastar*, "claims of false authorship . . . , when raised to protect an author's interest in the intellectual content of communicative products, [a]re not actionable under [the Lanham Act] and should instead be pursued under copyright law." *Gen. Universal*, 379 F.3d at 149; *WickFire, LLC v. Laura Woodruff; TriMax Media, LLC*, 989 F.3d 343, 351 (5th Cir. 2021) ("[T]here is no cause of action for violating the Lanham Act merely because the 'good' at issue incorporates the plaintiff's ideas, concepts, writings, or the like.").

> 2. <u>Meishe fails to plead a plausible claim based on removal or alteration of "copyright management information" under the Lanham Act</u>

Meishe appears to allege a false designation of origin through alleged removal/alteration of CMI, although Meishe provides no notice of **what** the allegedly removed or altered CMI is or from **where** it was removed. (SAC ¶ 161.) It appears Meishe may be referencing CMI as defined by the copyright statute, 17 U.S.C. § 1202. But alleged copyright-related violations cannot form the basis of Lanham Act false advertising claims. *See Barnstormers, Inc. v. Wing Walkers, LLC*, No. 10-cv-261-KC, 2011 WL 1671641, at *8 (W.D. Tex. May 3, 2011) ("False designation of origin cannot be proven simply by showing a copyright violation."); *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) ("[A]s a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act.").

## V.     <u>CONCLUSION</u>

For the reasons above, the Court should dismiss Meishe's claims under Rule 12(b)(6).

Dated: March 3, 2022

By: */s/ Yar R. Chaikovsky*

Yar R. Chaikovsky
yarchaikovsky@paulhastings.com
Philip Ou
philipou@paulhastings.com
David Okano
davidokano@paulhastings.com

1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:      1(650) 320-1800
Facsimile:      1(650) 320-1900

Jeff Pade (*pro hac vice forthcoming*)
jeffpade@paulhastings.com

2050 M Street NW
Washington, D.C. 20036
Telephone:      1(202) 551-1700
Facsimile:      1(202) 551-1705

Andy E. McSwain
State Bar No. 13861100
mcswain@thetexasfirm.com
Dan N. MacLemore
State Bar No. 24037013
maclemore@thetexasfirm.com

220 South Fourth Street
Waco, Texas 76701
Telephone: (254) 776-5500
Facsimile: (254) 776-3591

Attorneys for Defendants
TIKTOK INC., TIKTOK PTE. LTD.,
BYTEDANCE LTD., and BYTEDANCE INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

        */s/ Yar R. Chaikovsky*
        Yar R. Chaikovsky