# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | NO. 6:21-cv-504-ADA-JCM |
| | § | |
| TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., and BYTEDANCE INC., | § | |
| | § | |
| | § | **PUBLIC VERSION** |
| Defendants. | § | |
| | § | |
| | § | |

## DEFENDANTS' MOTION TO STAY BASED ON INTERNATIONAL ABSTENTION PENDING RESOLUTION OF PLAINTIFF'S PRIOR-FILED SUITS IN CHINA

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................ 1

    A.  Background of the Parties and Meishe's Allegations ............................ 1

    B.  Meishe's Prior-Filed Lawsuits in China Against Mr. Xie and BDL's Subsidiaries ............................................................................................. 3

    C.  Meishe's Claims in this Action Against BDL and Its Subsidiaries and Affiliates ................................................................................................. 5

III. LEGAL STANDARD .......................................................................................... 7

IV. ARGUMENT ....................................................................................................... 7

    A.  The Doctrine of International Abstention Based on Principles of Comity ............ 7

    B.  This Action Should Be Stayed in View of Meishe's Prior-Filed, Parallel Trade Secret and Copyright Actions in China ..................................... 10

        1.  The Similarity of the Parties and Issues Heavily Favors a Stay .............. 10

        2.  The Interests of Avoiding Duplicative Litigation and Risk of Inconsistent Findings Across Multiple Forums Weighs in Favor of a Stay ........................................................................................... 14

        3.  Considerations of Fairness and Prejudice to Parties and the Temporal Sequence of Filing Favors a Stay ........................................... 15

        4.  Considerations of Convenience and Judicial Efficiency Weigh in Favor of a Stay ...................................................................................... 16

        5.  China's Interest Far Outweighs Any Interest the U.S. May Have .......... 19

V.  CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah Sayid Rajab Al-Rifai & Sons WLL. v. McDonnell Douglas Foreign Sales Corp.*,
   988 F. Supp. 1285 (E.D. Mo. 1997).......................................................................................15

*African Methodist Episcopal Church v. Lucien*,
   756 F.3d 788 (5th Cir. 2014) ...............................................................................................10

*Anderson-Tully Lumber Co. v. Int'l Forest Prods., S.R.L.*,
   No. 5-cv-68, 2007 WL 2872413 (S.D. Miss. Sep. 26, 2007), *aff'd* 306 F.
   App'x 858 (5th Cir. 2009) ............................................................................... *passim*

*Argus Media, Ltd. v. Tradition Fin. Servs., Inc.*,
   No. 9-cv-7966, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009)................................9, 11, 13, 14

*Boushel v. Toro Co.*,
   985 F.2d 406 (8th Cir. 1993) .........................................................................................8, 10

*Charly Holdings, Inc. v. Curtom Classics, LLC*,
   No. 18-cv-2354, 2018 WL 6254586 (N.D. Ga. Nov. 14, 2018).............................................14

*Chateau Sch., Inc. v. Green Mt. Assocs.*,
   No. 18-cv-30, 2019 WL 692794 (D. Haw. Feb. 19, 2019)........................................13, 15, 16

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)...........................................................................................................7, 9

*Corning Inc. v. Talancon*,
   No. 8-cv-117, 2009 WL 10693893 (S.D. Tex. Mar. 31, 2009) .............................................16

*CRC Info. Sys. v. Quebecor World (USA), Inc.*,
   No. 3-cv-0591, 2003 U.S. Dist. LEXIS 29131 (D. Ariz. July 16, 2003)...............10, 11, 13, 15

*EFCO Corp. v. Aluma Sys., USA, Inc.*,
   983 F. Supp. 816 (S.D. Iowa 1997) ...............................................................................11, 14

*Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*,
   180 F.3d 896 (7th Cir. 1999) .......................................................................................8, 9, 19

*Groeneveld Transp. Efficiency, Inc. v. Eisses*,
   No. 7-cv-1298, 2007 WL 2769595 (N.D. Ohio Sept. 13, 2007), *appeal
   dismissed* 297 F. App'x 508 (6th Cir. 2008)........................................................................11

*Hale v. Fr. Lurssen Werft Gmbh & Co.*,
  No. 9-cv-23787, 2010 WL 11601558 (S.D. Fla. Apr. 23, 2010) ............................................20

*Hilton v. Guyot*,
  159 U.S. 113 (1895) ...............................................................................................................8

*Ingersoll Milling Mach. Co. v. Granger*,
  833 F.2d 680 (7th Cir. 1987) ............................................................................................9, 19

*Innovation First Int'l, Inc. v. Zuru, Inc.*,
  No. 11-cv-2726, 2012 WL 12897157 (N.D. Tex. Apr. 10, 2012), *aff'd* 513 F.
  App'x 386 (5th Cir. 2013) .....................................................................................................7

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ...................................................................................................7, 10, 14

*Louisiana Power & Light Co. v. City of Thibodaux*,
  360 U.S. 25 (1959) .................................................................................................................7

*MacDermid Offshore Sols., LLC v. Niche Prod., LLC*,
  No. 12-cv-2483, 2013 WL 3980870 (S.D. Tex. Aug. 2, 2013) .............................................14

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) .............................................................................................8, 19

*Multi Holsters, LLC v. Tac Pro Inc.*,
  No. 17-cv-10438, 2017 WL 4098857 (E.D. Mich. Sep. 15, 2017)...................................15, 20

*Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*,
  356 F. App'x 675 (5th Cir. 2009) ..........................................................................................9

*Posner v. Essex Ins. Co.*,
  178 F.3d 1209 (11th Cir. 1999) .........................................................................................8, 10

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996)...............................................................................................................9

*Rocha v. Metro. Life Ins. Co.*,
  No. 5-cv-60, 2006 WL 8434204 (W.D. Tex. Jan. 11, 2006) ..............................................7, 8

*Sabre, Inc. v. Air Can.*,
  No. 2-cv-2016, 2002 U.S. Dist. LEXIS 23697 (N.D. Tex. Dec. 9, 2002) ..............................8

*Societe Nationale D'Industries Nutritive S.A.E. v. Coca-Cola Co.*,
  No. 8-cv-3565, 2009 WL 10688837 (N.D. Ga. Feb. 6, 2009), *aff'd* 410 F.
  App'x 179 (11th Cir. 2010) ..................................................................................................11

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S.D. Iowa*,
    482 U.S. 522 (1987)........................................................................................................8

*Tarazi v. Truehope Inc.*,
    958 F. Supp. 2d 428 (S.D.N.Y. 2013).........................................................................11

*Torres v. S. Peru Copper Corp.*,
    965 F. Supp. 899 (S.D. Tex. 1996), *aff'd* 113 F.3d 540 (5th Cir. 1997) ..................9

*Turner Ent. Co. v. Degeto Film GmbH*,
    25 F.3d 1512 (11th Cir. 1994) ....................................................................................8

## Other Authorities

Restatement (Third) of the Foreign Relations Law of the United States Section
    403............................................................................................................................8

## I.   <u>INTRODUCTION</u>

The root cause of this dispute is an allegation that an individual who works and resides in Beijing, China misappropriated trade secrets tied to software he developed while working for Plaintiff in Beijing, and used the trade secrets to develop products in China.  This dispute has spawned multiple lawsuits in China's ███████████████ courts—all filed by Plaintiff— against entities based in China over intellectual property registered and developed in China. Unsurprisingly, the vast majority of witnesses and evidence bearing on this dispute are located in China, and Plaintiff's prior-filed lawsuits in China are set to address ████████████████████ and same alleged acts underlying Plaintiff's trade secret claims raised in this suit under Chinese law pursuant to the choice-of-law provision in the relevant employment contract.

The doctrine of international abstention authorizes U.S. courts to stay an action in view of parallel litigation in a foreign country based on principles of comity.  While courts have not followed a uniform standard to determine when comity advises a stay of a U.S. action, the abstention inquiry has coalesced around a number of often-considered factors, including the similarity of parties and issues, risk and avoidance of duplicative litigation and inconsistent decisions, inquiries into fairness and prejudice to parties, considerations of convenience to the parties and judicial efficiency, and the relative strength of the respective governmental interests in resolving the parties' disputes.  Given the focus on parties, actions, and property in China and the key role that China law will play, these factors strongly support a stay of this action under the doctrine of international abstention pending resolution of the parallel litigation in China.

## II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.  <u>Background of the Parties and Meishe's Allegations</u>

Plaintiff Beijing Meishe Network Technology Company ("Meishe") is a privately held Chinese company with its headquarters in Beijing, China.  Dkt. No. 9 ("SAC") ¶ 10.  Meishe

alleges that it develops software for "video and audio editing processing," *id.* ¶ 53, at its headquarters in Beijing.[1]  Meishe further alleges that it has sought copyright protection in China at the Copyright Protection Centre of China ("Chinese Copyright Office") for the software code underlying these video/audio editing functions.  *Id.* ¶ 54 (listing Chinese-registered copyrights of "Meishe 1.0" and "some of its updates").  The alleged Chinese copyrights are not registered in the U.S.  *Id.* ¶ 2.  Meishe has not attached to its pleadings or otherwise provided its Chinese-registered copyrights to Defendants, which are only in the possession of Meishe, the Chinese Copyright Office, and the Chinese courts in which Meishe is pursuing parallel copyright and trade secret claims against Mr. Xie Jing and entities that operate within China that are also subsidiaries of Defendant ByteDance Ltd. ("BDL").  Decl. of Zhicheng Pan ("Pan Decl.") ¶¶ 43–45.[2]

The crux of Meishe's claims is an allegation that its former software developer, Chinese national Mr. Xie, misappropriated source code for video/audio editing functions from Meishe in Beijing and brought it to his new employer—a Chinese operating subsidiary of BDL (not named by Meishe in this action)—where the code was used to develop a series of applications in China, including the Douyin app, the TikTok app, and others.  Specifically, Meishe alleges Mr. Xie began working for a Meishe affiliate, Xin Ao-Te, in China in 2007 and subsequently began working for Meishe in March 2015, where he participated in the development of "Meishe v1.0" and unspecified updates to Meishe's software.  SAC ¶ 60. Meishe alleges that under Mr. Xie's "employment agreement with Meishe" and as part of Meishe's "company policy," Mr. Xie was prohibited from acquiring or using the source code outside of his employment with Meishe.  *Id.* ¶ 96.  Mr. Xie's employment contract with Meishe contains a Chinese choice-of-law provision, which mandates

---

[1] Meishe does not allege it has a physical presence in the U.S. or any particular ties to the U.S.—much less the Western District of Texas—beyond the claims in this litigation.

[2] This Pan Declaration was also filed with Defendants' Rule 12 motion. Dkt. Nos. 27–29, 31, 32.

application of Chinese law to both contract and non-contract claims.  Pan Decl. ¶¶ 48–51.

Meishe maintains it has audited records and logs showing Mr. Xie "accessed" and "downloaded the source code" from its repository in Beijing on June 3, 2015, SAC ¶¶ 61, 102, and subsequently resigned from Meishe on June 8, 2015, *id*. ¶¶ 60, 62.  Meishe alleges that in October 2017—two years and four months after leaving his job with Meishe—Mr. Xie began working for Beijing ByteDance Technology Co., Ltd. ("Beijing ByteDance") in China.  *Id*. ¶¶ 99–100.  Meishe contends that Mr. Xie and BDL's subsidiaries used and copied Meishe's video/audio editing source code to develop a series of applications in China—including TikTok, Douyin, Jianying, and CapCut—incorporating similar video/audio editing functionality.  *Id*. ¶¶ 17, 56, 98.

Meishe alleges the TikTok app is the "international version of [the] Chinese application, Douyin."  SAC ¶¶ 55, 80.[3]  Meishe alleges that both the Douyin and TikTok apps (and others) utilize the video/audio editing functionality source code allegedly taken from its Beijing headquarters by Mr. Xie.  SAC ¶ 56 ("Meishe discovered that a series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018 . . . includ[ing], but [] not limited to, TikTok, Douyin, Jianying, and CapCut").  ████████████████████ ████████████████████████████████████████████.  Declaration of Jianchao Yang ("Yang Decl.") ¶ 11.

**B.  Meishe's Prior-Filed Lawsuits in China Against Mr. Xie and BDL's Subsidiaries**

Meishe alleges that it discovered in March 2021 that "a series of apps belonging to ByteDance, Ltd. [*sic*] had infringed [its] copyright since at least 2018 [including] TikTok, Douyin, Jianying, and CapCut."  Meishe then filed ███ copyright and trade secret misappropriation actions in Chinese courts: (1) ████████████████████████████████████████████

---

[3] Douyin and TikTok are different apps, but both allow creators to create and upload video content. Douyin is only available in China; TikTok is available outside China (including the U.S.).

██████████, and (2) ████████████████████████████████████

████████████████████████████████████. SAC ¶¶ 56, 80; Pan Decl. ¶¶ 11–42.   As

described by Meishe, the "multiple lawsuits" allege "ByteDance incorporated Meishe's protected

code in its products," including "[v]ideo and audio editing and processing functions" and that

"[d]espite the litigation in China . . . Defendants have not altered their behavior and continue to

infringe Meishe's copyrights and benefit from misappropriat[ion] of [its] trade secrets." SAC ¶ 80.

Meishe filed its China trade secret lawsuit in the ████████████ on April 15, 2021.

Meishe asserts a claim under ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. Pan Decl. ¶¶ 15–18. Meishe generally alleges that Mr. Xie, in violation of his

confidentiality agreement and Chinese law, illegally obtained Meishe's video/audio editing source

code and brought it to his subsequent employer, Beijing ByteDance—which is not a party to this

suit—and that Beijing ByteDance ████████████████████████ used Meishe's source

code to develop video/audio editing functionality in the Douyin app. *Id.*; SAC ¶ 80. ████████

████████████████████████████████████. Pan Decl. ¶ 18.

Meishe's copyright actions in China assert ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*

¶¶ 19–42. The ████ actions generally consist of the same claims and allegations—that the accused

---

4 ████████████████████████████████████████████████
████████████████████████████████████ Pan. Decl. ¶ 40.

app uses the video/audio editing functions allegedly protected by Meishe's Chinese-registered copyrights. *Id.* The lawsuits differ, however, in three primary ways.  First, some of Meishe's copyright suits ███████████████████, while others ████████████████████ ████████████.  Second, each suit generally names a ████████████████████ ███████████████████████████████████████,[5] presumably based on Meishe's belief as to which entity is affiliated with the accused app.  Finally, each lawsuit accuses a ████████ ████████████████████████████████████████████████████████████████ although each suit is premised on the same core allegation that the app incorporates the video/audio editing functionality from Meishe's Chinese-copyrighted source code. *Id.* ¶¶ 13–42.  Across all ███ actions, Meishe seeks ████████████████████████████. *Id.* ¶ 14.

### C.  <u>Meishe's Claims in this Action Against BDL and Its Subsidiaries and Affiliates</u>

Meishe's claims in this action rest on the premise that BDL, after allegedly acquiring Meishe's code through Mr. Xie, used it to develop the video/audio editing functionality in a series of apps operated by its subsidiaries, including TikTok, Douyin, Jianying, and CapCut.  SAC ¶ 17 ("ByteDance Ltd. developed the TikTok app and operates and controls the app in the United States through its subsidiaries and affiliates [including Defendants] TikTok Inc., ByteDance Inc., and TikTok Pte. Ltd."); *id.* ¶ 18 ("ByteDance Ltd. operates the app[.]"), ¶¶ 19–20.

Meishe asserts seven claims against Defendants—each premised on unlawful copying and misappropriation of the same source code at issue in Meishe's prior-filed Chinese actions.  First, Meishe asserts a claim for copyright infringement based on allegedly copyrighted source code described as "Meishe v1.0"—registered only in China at the Chinese Copyright Office—along

---

[5] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ Pan Decl., Ex. 13.

with a series of copyrights that "were registered as updated versions to Meishe v1.0." SAC ¶ 72. The copyrights are not registered in the U.S. and, while Defendants do not have access to these Chinese-registered copyrights, based on its registration number, the "Meishe v1.0" copyright (Chinese Copyright No. 2015SR227927) ████████████████████████████████████████ ██████████████████████████. Additional Chinese copyrights alleged to be "updated versions to Meishe v1.0" are ████████████████████████████. *See supra* § II.B.[6]

Meishe attempts to leverage the prior-filed Chinese copyright actions regarding the Douyin app to form the basis for willful infringement of the same copyrights in this action. *See* SAC ¶ 80 (quoting from a press release and asserting: "Despite the litigation in China . . . Defendants have not altered their behavior and continue to infringe Meishe's copyrights and benefit from misappropriat[ion] of Meishe's trade secrets."); *id*. Prayer for Relief ¶ O.

Meishe's trade secret misappropriation claims—asserted under Texas statutory law and common law and U.S. statutory law—rest entirely on allegations that Mr. Xie took Meishe's source code from its Beijing headquarters and subsequently used the source code when he joined Beijing ByteDance by "incorporat[ing] [it] into subsequent software including software controlled and distributed by ByteDance and its subsidiaries, including TikTok." SAC ¶ 98. The factual nucleus for these claims is the same as those Meishe is pursuing █████████████████████ ████████ in China. Finally, Meishe asserts a claim for false advertising under the Lanham Act, unjust enrichment under Texas law, and aiding/abetting a breach of fiduciary duty under Texas law, each of which are similarly predicated on the premise that Mr. Xie unlawfully took the video/audio editing source code from Meishe's headquarters while in China and that he and BDL

---

[6] This copyright infringement claim (and those asserted in the Chinese actions) are not about any "look and feel" nonliteral elements of the TikTok or Douyin apps such as their user interfaces. Rather, Meishe alleges infringement of the functional elements (allegedly derived from the source code), in particular, the "[v]ideo and audio editing and processing functions." SAC ¶ 80.

subsequently used and copied it to develop several apps.  *See* SAC ¶¶ 162, 170, 178.

### III.   LEGAL STANDARD

Under principles of comity and international abstention, a court has discretion to stay an action or decline to exercise its jurisdiction in a case that can be properly adjudicated in a foreign state.  *Rocha v. Metro. Life Ins. Co.*, No. 5-cv-60, 2006 WL 8434204, at *1 (W.D. Tex. Jan. 11, 2006), *rep't and rec. adopted*, 2006 WL 8434205 (W.D. Tex. Mar. 8, 2006).  Such motions are governed by the same evidentiary standard as a motion under *forum non conveniens*, permitting consideration of evidence outside the pleadings, similar to a summary judgment motion.  *See Anderson-Tully Lumber Co. v. Int'l Forest Prods., S.R.L.*, No. 5-cv-68, 2007 WL 2872413, at *3–7 (S.D. Miss. Sep. 26, 2007), *aff'd* 306 F. App'x 858, 861 (5th Cir. 2009); *see also Innovation First Int'l, Inc. v. Zuru, Inc.*, No. 11-cv-2726, 2012 WL 12897157, at *7 (N.D. Tex. Apr. 10, 2012) (granting dismissal under *forum non conveniens*, finding trade secret dispute should be resolved in China, and relying on submitted declarations relating to potential trade secret suit in China), *aff'd* 513 F. App'x 386, 392 (5th Cir. 2013).

### IV.   ARGUMENT

#### A.   The Doctrine of International Abstention Based on Principles of Comity

A court "may decline to exercise or postpone the exercise of its jurisdiction" when there are related proceedings pending in a different forum.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *Anderson-Tully*, No. 5-cv-68, 2007 WL 2872413, at *6 ("[C]ourts have regularly exercised their authority to dismiss or stay actions in deference to ongoing foreign proceedings.").  This authority is within "power inherent in every court to control the disposition of the causes on its docket."  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

Courts initially applied the abstention doctrine to justify the stay of federal court actions pending resolution of related state suits under principles of federalism.  *See Louisiana Power &*

*Light Co. v. City of Thibodaux*, 360 U.S. 25, 27 (1959) (recognizing "the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law"). Courts expanded the abstention doctrine to stay domestic suits (or decline jurisdiction altogether) in the face of concurrent foreign actions under principles of international comity. *See Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) ("[I]n some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction."). Comity is "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S.D. Iowa*, 482 U.S. 522, 543 n.27 (1987).

Whether exercise of abstention is appropriate under principles of comity "must necessarily depend on a variety of circumstances which cannot be reduced to any certain rule." *Hilton v. Guyot*, 159 U.S. 113, 164-65 (1895). Many courts, including some in the Fifth Circuit, have evaluated non-exhaustive factors such as: "(1) the similarity of parties and issues; (2) promotion of judicial efficiency; (3) the adequacy of relief in the alternative forum; (4) considerations of fairness and prejudice to parties; and (5) the temporal sequence of filing." *Anderson-Tully*, 2007 WL 2872413, at *6.[7] Many courts have also considered the comparative strength of the U.S. and foreign government's interests in regulating the parties and their disputes. *See Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (affirming stay under abstention of dispute over ownership of helicopters in St. Lucia in view of parallel proceedings there); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1223 (11th Cir. 1999); *Boushel v. Toro Co.*, 985 F.2d 406, 409–10 (8th Cir. 1993); *Mujica v. AirScan Inc.*, 771 F.3d 580, 603 (9th Cir. 2014).[8]

---

[7] *See also Sabre, Inc. v. Air Can.*, No. 2-cv-2016, 2002 U.S. Dist. LEXIS 23697, at *21 (N.D. Tex. Dec. 9, 2002) (applying similar factors); *Rocha*, 2006 WL 8434204, at *2 (same).

[8] Other courts have relied on Section 403 of the Restatement (Third) of the Foreign Relations Law of the United States, which identifies more generalized factors that courts can consider in

Between dismissal and stay, circumstances permitting dismissal "are considerably more limited than the circumstances appropriate for abstention." *Colorado River*, 424 U.S. at 818. This is because an order staying an action is not considered—as is outright dismissal—an "abnegation of judicial duty," but may instead be "a wise and productive discharge of it," especially when resulting in "postponement of [a] decision for its best fruition." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996).

Thus, while the Fifth Circuit has endorsed that "[d]ismissal of a suit on international comity grounds may sometimes be appropriate when there is litigation pending in a foreign forum," *Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 681 (5th Cir. 2009), Defendants seek a more measured approach here: a stay until resolution of the earlier-filed actions in China. *See Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 686 (7th Cir. 1987) ("[I]t is not insignificant—indeed, it is very significant—that the district court's action in this case was a decidedly measured one. The court did not dismiss the action; it simply stayed further proceedings until the Belgian appeals were concluded."); *Finova*, 180 F.3d at 900 ("We are mindful also that, rather than dismissing the action, the district court took the more measured step of staying the proceedings."); *Argus Media, Ltd. v. Tradition Fin. Servs., Inc.*, No. 9-cv-7966,

---

determining whether to defer to a foreign action. *Torres v. S. Peru Copper Corp.*, 965 F. Supp. 899, 908 (S.D. Tex. 1996), *aff'd* 113 F.3d 540, 544 (5th Cir. 1997). These include:

> (a) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory; (b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity regulated, . . . ; (c) the character of the activity to be regulated, the importance of regulation to the regulating state, . . . ; (d) the existence of justified expectations that might be protected or hurt by the regulation; (e) the importance of the regulation to the international political, legal, or economic system; (f) the extent to which the regulation is consistent with the traditions of the international system; (g) the extent to which another state may have an interest in regulating the activity; and (h) the likelihood of conflict with regulation by another state.

2009 WL 5125113, at *6–7 (S.D.N.Y. Dec. 29, 2009) (denying dismissal, but staying under abstention in view of prior-filed U.K. action); *CRC Info. Sys. v. Quebecor World (USA), Inc.*, No. 3-cv-591, 2003 U.S. Dist. LEXIS 29131, at *12–14 (D. Ariz. July 16, 2003) (same).

**B.** **This Action Should Be Stayed in View of Meishe's Prior-Filed, Parallel Trade Secret and Copyright Actions in China**

**1.** **The Similarity of the Parties and Issues Heavily Favors a Stay**

Courts first assess the similarity of the parties and issues raised in both forums to appreciate the extent to which the prior-filed foreign action is likely to resolve issues raised in the federal forum. *Anderson-Tully*, 2007 WL 2872413, at *7. "[T]he parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action." *Id*. (citing *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 253 (D. Mass. 1999)). Rather, this factor favors abstention where there is substantial overlap in the actions, including by way of significantly common parties and common operative facts underlying the claims. *See Boushel*, 985 F.2d at 409–10 n.2 (despite issues that "[we]re not identical" due to additional named defendants, "substantial overlap in the two cases" which "ar[o]se[] out of the same operative facts" warranted stay of federal action); *Posner*, 178 F.3d at 1224 ("[A]lthough this case and the Bermuda action are not identical, they do involve significantly common issues and parties.").[9]

**a.** **Similarity of Parties**

Meishe is the sole plaintiff in this action and each action in China. While the named defendants differ, all defendant entities are subsidiaries of the BDL parent. In the U.S., Meishe has sued BDL and several of its U.S. subsidiaries; in China, Meishe has sued a number of BDL's subsidiaries in China and Mr. Xie, an employee of a BDL subsidiary in China.

---

[9] *See also Landis*, 299 U.S. at 254 (rejecting notion that "the parties to the two causes must be shown to be the same and the issues identical"); *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014) (the "parties in the two actions" do not need to be "precisely identical," particularly where "[t]he interests of all of the parties named in either action align").

Courts find a parent-subsidiary and similar corporate affiliations across the federal and foreign actions to be sufficiently similar for purposes of international abstention. *Societe Nationale D'Industries Nutritive S.A.E. v. Coca-Cola Co.*, No. 8-cv-3565, 2009 WL 10688837, at *7 (N.D. Ga. Feb. 6, 2009) ("Parties and issues need not be identical, only 'significantly common.' A parent company and its subsidiaries should meet that threshold." (quoting *Posner*, 178 F.3d at 1224)), *aff'd* 410 F. App'x 179 (11th Cir. 2010); *Groeneveld Transp. Efficiency, Inc. v. Eisses*, No. 7-cv-1298, 2007 WL 2769595, at *2 (N.D. Ohio Sept. 13, 2007) (finding federal and foreign actions "parallel" despite mismatch of parent company's subsidiaries across actions), *appeal dismissed* 297 F. App'x 508 (6th Cir. 2008); *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 434 (S.D.N.Y. 2013) ("Generally, parties in two cases are 'substantially similar' for the purposes of [a comity] analysis when they are affiliates or have a similarly close relationship." (collecting cases)).

Indeed, district courts have often found that parallel federal and foreign copyright suits against companies and their affiliates relating to the same copyrighted works satisfy the "party similarity" factor for purposes of international abstention even if the parties are not identical across the actions. *E.g.*, *Argus Media*, 2009 WL 5125113, at *6 (finding party similarity where plaintiff brought action in U.K. against U.K. company based on U.K. copyright, and action in U.S. against U.K. company's U.S. affiliate based on U.S. copyright of same work); *CRC Info.*, 2003 U.S. Dist. LEXIS 29131, at *9 (finding plaintiff's U.S. action asserting trade secret, copyright, and unfair competition claims against U.S. subsidiary (QWUSA) sufficiently similar to plaintiff's copyright and trade secret claims in foreign action asserted against QWUSA's foreign parent company, QW); *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F. Supp. 816, 823–25 (S.D. Iowa 1997) (plaintiff's prior-filed foreign copyright and trade secret action similar to U.S. action despite naming California-based affiliate in U.S. action but not foreign action).

### b. **Similarity of Claims**

There is also substantial similarity of the claims and issues raised in this action and Meishe's Chinese actions.  In its complaint, Meishe alleges Mr. Xie took and copied "code used to implement video and audio editing functions" that appears in at least "TikTok, Douyin, Jianying, and CapCut." SAC ¶¶ 56, 80.  To be clear, despite the allegedly similar use of the video/audio editing functionality in the TikTok and other named apps, the apps are otherwise differently situated. They are run by separate, independent entities, available in mutually exclusive geographical regions, and user data relating to the two apps are retained and processed separately. SAC, Ex. D (Decl. of Roland Cloutier) ¶¶ 4, 8, 10.

Regardless, Meishe's allegations—which control the scope of its claims—implicate the same actor (Mr. Xie) and same code (certain video/audio editing functionality) across the actions in China (Douyin and Jianying ███████████████████████████).  Further, Meishe appears to premise its willfulness claims against the BDL subsidiaries that are defendants in this *U.S. action* on the "lawsuits *against ByteDance* [in China] alleging that ByteDance incorporated Meishe's protected code in its products." SAC ¶ 80 (emphasis added). "Despite the litigation in China," Meishe alleges the U.S. defendants "have not altered their behavior and continue to infringe Meishe's copyrights" and benefit from trade secret misappropriation.  *Id.*

Moreover, the prior-filed trade secret suit in China will resolve several critical issues that may be dispositive of Meishe's claims in this action.  These include: (1) whether Meishe's code is protectable as a trade secret—*i.e.*, whether Meishe has taken reasonable means to keep it secret and whether it derives economic value from being secret and not readily ascertainable; (2) whether Meishe is the owner of the code it contends is a trade secret; (3) whether Mr. Xie took Meishe code in violation of his employment contract, Chinese law, or other rule binding on him as a Meishe employee; (4) whether Mr. Xie brought Meishe's code to his new position at Beijing

ByteDance and used it to develop the accused software; and (5) whether BDL or its subsidiaries knew or had reason to know that Meishe code had been improperly acquired or used by Mr. Xie. These are potentially dispositive issues across both actions regardless of the app or entity accused.

Likewise, Meishe's prior-filed copyright actions in China against BDL's subsidiaries are based on the same alleged copying asserted here, ███████████████████████████████ ███████. Pan Decl. ¶¶ 19–42. As explained in Defendants' Rule 12(b)(6) motion, Meishe's copyright claims rest on its registered copyright No. 2015SR227927 for "Meishe v1.0"—which is asserted in this action ██████████████████████████████████. The remaining copyrights Meishe asserts here are allegedly "updated versions" of "Meishe v1.0." SAC ¶ 72.[10]

Thus, Meishe's prior-filed trade secret and copyright actions in China assert overlapping intellectual property rights asserted in this action, and the predicate facts in the Chinese actions are the same core facts underlying Meishe's claims in this action. Courts find that the "similarity of issues" factor weighs in favor a stay where the claims are based on the same operative allegations and the same intellectual property rights are asserted in both actions, even if the asserted claims are not identical. *See, e.g.*, *Argus Media*, 2009 WL 5125113, at *6 ("At [their] core, both [the U.S. and U.K. actions] involve [the defendants'] (and/or their affiliates') right to copy and [distribute plaintiff's] copyrighted work," and reasoning U.K. action will be "instructive on the ultimate resolution" of U.S. action); *CRC Info.*, 2003 U.S. Dist. LEXIS 29131, at *13 (finding similarity in view of similar copyright and trade secret claims asserted in foreign action, and finding resolution of underlying license dispute asserted in foreign action was "essential first step in resolving the parties' dispute"); *Chateau Sch., Inc. v. Green Mt. Assocs.*, No. 18-cv-30, 2019 WL 692794, at *7

---

[10] Defendants do not have access to Meishe's Chinese-registered copyrights. Pan Decl. ¶¶ 43–45. Meishe has not plausibly alleged Defendants obtained access to the "updated versions," all of which were registered *after* Mr. Xie's employment with Meishe (and thus his access to Meishe source code) had ended in June 2015. SAC ¶ 71; Dkt. 27 (Rule 12(b)(6) motion) at 5–6.

(D. Haw. Feb. 19, 2019) (though claims asserted in U.S. and Japan were not identical, "parallelism" factor weighed in favor of abstention because "primary thrust of [U.S. action]— infringement of a trademark[]—[was] asserted in the Japan Action").

Indeed, even if claims remain after the actions in China conclude, a stay does not deprive the plaintiff of the potential for adequate relief. *See Landis*, 299 U.S. at 256 (explaining that stays do not "depriv[e] the processes of justice" and finding that pending cases in other jurisdiction "may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all"). This is precisely how district courts resolve cross-national disputes that originate in a foreign country and may have an impact on litigation in the U.S. *See MacDermid Offshore Sols., LLC v. Niche Prod., LLC*, No. 12-cv-2483, 2013 WL 3980870, at *9 (S.D. Tex. Aug. 2, 2013) (stay of U.S. action warranted where foreign action could resolve predicate facts—validity of report and testing of foreign products—underlying claims in U.S. action that the reports were misleading when distributed in U.S.); *Argus Media*, 2009 WL 5125113, at *6 (stay of U.S. action warranted where copyright infringement began in foreign country and subsequent distribution ultimately occurred in U.S.)

### 2. The Interests of Avoiding Duplicative Litigation and Risk of Inconsistent Findings Across Multiple Forums Weighs in Favor of a Stay

Another critical factor is whether, in the absence of a stay, the federal and foreign forums may otherwise engage in duplicative litigation, risking inconsistent decisions on the same issues raised in both forums. *See Charly Holdings, Inc. v. Curtom Classics, LLC*, No. 18-cv-2354, 2018 WL 6254586, at *5 (N.D. Ga. Nov. 14, 2018) (finding deference to U.K. Intellectual Property Enterprise Court "avoid[s] piecemeal litigation" and "minimizes the chances of inconsistent judgments"); *EFCO*, 983 F. Supp. at 824 ("[m]aintaining two concurrent and simultaneous proceedings would consume a great amount of judicial, administrative, and party resources" and

"simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments"); *CRC Info.*, 2003 U.S. Dist. LEXIS 29131, at \*14 ("[I]t is unnecessary and imprudent to allow duplicative litigation. It is wiser to avoid an unnecessary expenditure of judicial resources and the risk of inconsistent results.").

Meishe's prior-filed actions in China and this action rest on the same operative facts—all of which occurred in China. *See* section IV.B.1; SAC ¶¶ 56, 80. Absent a stay, there will be duplicative litigation here and in China, ensuring substantial international expenditure of party and judicial resources litigating similar issues, and raising risks of inconsistent decisions.  For example, as explained in Defendants' Rule 12(b)(6) motion (Dkt. No. 27 at 16–19), Meishe's trade secret claims require interpretation of Chinese law and contracts.  This factor weighs heavily in favor of a stay.  *See Chateau*, 2019 WL 692794, at \*5 (noting concern of "duplicating efforts and possibly reaching different results" where "Japan Action involves both the same Advisory Agreement at issue . . . and the same dispute concerning . . . alleged infringement of Plaintiff's trade-secret information"); *Multi Holsters, LLC v. Tac Pro Inc.*, No. 17-cv-10438, 2017 WL 4098857, at \*6 (E.D. Mich. Sep. 15, 2017) (finding "avoidance of piecemeal litigation" and "duplicitous claims" heavily favored abstention where "[t]he two lawsuits are nearly identical as they relate to the contractual dealings between the parties and the alleged misuse of confidential information").

   **3.  Considerations of Fairness and Prejudice to Parties and the Temporal Sequence of Filing Favors a Stay**

Meishe elected to file multiple actions in Chinese courts based on the same core facts raised in this action.  Given this choice, Meishe cannot now claim unfairness or prejudice by litigating first in China.  *See Anderson-Tully*, 2007 WL 2872413, at \*6 ("The law is clear that when a [party] invokes the laws of a particular jurisdiction, it cannot then repudiate the courts of that jurisdiction as unable to afford justice to its claims." (quotations omitted)); *Abdullah Sayid Rajab Al-Rifai &*

*Sons WLL. v. McDonnell Douglas Foreign Sales Corp.*, 988 F. Supp. 1285, 1293 (E.D. Mo. 1997) (party "should not be heard to complain that the relief available from the Court of First Instance is inadequate when it initially chose the forum and invoked that court's jurisdiction").

Relatedly, Meishe's election to file multiple actions first in China means that the temporal sequence of filing and the case progression of Meishe's prior-filed Chinese actions also favors stay. *See Anderson-Tully*, 2007 WL 2872413, at *7 ("[T]he temporal sequence of filing favors the Italian action, since it was commenced first[.]"); *Corning Inc. v. Talancon*, No. 8-cv-117, 2009 WL 10693893, at *3 (S.D. Tex. Mar. 31, 2009) (same). Meishe's Chinese actions were not only filed before the instant action, but are well underway. *See* Pan Decl. ¶¶ 6–8, 46–47. Chinese courts have almost certainly begun the process of evaluating Meishe's claims.

### 4. Considerations of Convenience and Judicial Efficiency Weigh in Favor of Stay

The judicial efficiency and convenience factors favor a stay where "the majority of the witnesses and evidence are located" in the jurisdiction where the parallel foreign suit is pending. *Anderson-Tully*, 2007 WL 2872413, at *6. This factor favors stay even more where the majority of relevant testimony and documents must be translated from their native language to English. *Id*. at *5 ("Court would be faced with complications in having witnesses travel from Italy, and in translating testimony and documents"); *Chateau*, 2019 WL 692794, at *4 (in trade secret and trademark dispute, majority of documents and witnesses located in Japan, and comparatively more English-to-Japanese translation and interpretation required).

As an initial matter, Meishe and Mr. Xie—an employee of a BDL subsidiary in China and the key actor to *all* Meishe's allegations—are in China. Any claim of prejudice or unfairness by Meishe as it relates to litigating this dispute in China or submitting evidence to the Chinese courts where Meishe has filed suit would be questionable at best. *See Anderson-Tully*, 2007 WL 2872413, at *6 (no unfairness or prejudice to parties in litigating dispute in Italy based on parties'

connections to Italy, with one party headquartered there and the other having an Italian subsidiary).

The location of material witnesses also weighs in favor of deference to the actions in China. As discussed in section II.A, the most important witnesses to this dispute work and reside in China, and many speak Chinese as their first language.  The primary actor underlying Meishe's claims is its former employee, Mr. Xie, who is a Chinese citizen, resides in China, and works for a BDL subsidiary in China.  *See* Yang Decl. ¶ 10.  Other Meishe and employees of BDL subsidiaries in China may also be critical witnesses to this case, and like Mr. Xie, work and reside in China.

For example, Meishe's current and former employees have relevant and near-exclusive knowledge of potentially dispositive issues, *inter alia*: (1) facts regarding alleged ownership and development of the underlying the code at issue, *see* SAC ¶¶ 54, 87–89, 91, 149 ("[Meishe] created these trade secrets through extensive time, labor, skill, and money. *Twelve employees* worked to develop Meishe's code for nearly two years from about October 2013 to June 2015." (emphasis added)); (2) Mr. Xie's development activities at Meishe relating to the accused code, *id*. ¶ 60 (alleging "Jing Xie directly participated in the development of 'Meishe v.1.0'"); and (3) the efforts by Meishe to maintain the alleged secrecy of the code at issue, *id*. ¶ 152 ("[Meishe] has taken reasonable and extensive efforts to keep their trade secrets secret through the use of Nondisclosure and Confidentiality Agreements, employment agreements, employee training, and other measures. All of [Meishe's] trade secrets are stored on secure servers and are password-protected.").  These issues are critical to determining whether Meishe's source code is entitled to trade secret protection, and sources of proof on these issues are almost exclusively located in China.

Further, employees of BDL subsidiaries in China have first-hand knowledge of, *inter alia*, (1) Mr. Xie's activities when he joined Beijing ByteDance, including his involvement in development of the accused code for the "video and audio editing functions" common to Meishe's

allegations in the U.S. and China (*see id.* ¶ 56); (2) whether any Meishe source code was used or copied in development of the accused "video and audio editing functions;" and (3) whether BDL or its subsidiaries knew or had reason to know that Mr. Xie had allegedly taken and used Meishe source code in development of that functionality.   These issues are important to determining whether any liability for BDL and its subsidiaries exists for Meishe's claims across both forums.

Additionally, the parties' respective source code and development records—the most important documentary evidence in this case ███████████████.  For example, Meishe alleges that Mr. Xie was working at its offices in China when the alleged misappropriation occurred.  *See* SAC ¶¶ 58–61.  Moreover, the logs that Meishe alleges show Mr. Xie accessed and downloaded its source code are in Beijing, as are the documents associated with the alleged audit Meishe performed on the log.  *Id*. ¶¶ 61, 102, 131.  Mr. Xie's employment contract with Meishe, *id*. ¶¶ 96, 127, and Meishe's company policies, nondisclosure and confidentiality agreements, and employee training materials, *id*. ¶¶ 90, 122, are also located in Beijing at Meishe's headquarters.  Finally, all other records in Meishe's possession relating to the development, creation, and storage of the source code and its purported Chinese copyrights are located in Beijing.  In contrast, no evidence of the key facts underlying Meishe's claims is located in the U.S.—let alone Texas.

The code for "video and audio editing functions" accused by Meishe in its complaint (SAC ¶ 56) ██████████████.  Yang Decl. ¶ 11.  While some versions of this code can also be accessed in California, neither this code, nor any source code for apps accused by Meishe in the U.S. or in China, are located in Texas.  *Id*.  The code for "video and audio editing functions" accused by Meishe would be versions of the source code that existed immediately prior to hiring Mr. Xie and versions corresponding to when the alleged "use" occurred. ████████████████████████

██████.  *Id*.  Records regarding Mr. Xie's recruitment, employment, and development activities

when he joined Beijing ByteDance are located in China.  *Id.* ¶ 10.  This evidence is relevant to Meishe's trade secret and copyright infringement allegations and whether Defendants "knew or had reason to know" that the code was improperly used by Mr. Xie.  SAC ¶¶ 103, 132.

Finally, there are also critical third-party witnesses in China.  For example, Mr. Xie's employment history for the two years between leaving Meishe in June 2015 and joining Beijing ByteDance in October 2017 will likely involve third-party witnesses in China.  *See* SAC ¶ 63 (alleging that Mr. Xie "provided [Meishe's source code] to one or more later employers").  Evidence from these "one or more" companies will be relevant to whether Mr. Xie used this code and the extent to which Defendants knew about the alleged misappropriation.  The nature of Mr. Xie's activities for these former employers may also show that he developed unique knowledge, skills, and experience relating to video/audio software that he brought to Beijing ByteDance, separate and apart from any allegedly misappropriated Meishe code.

### 5.   China's Interest Far Outweighs Any Interest the U.S. May Have

Courts often consider the comparative interest each government has in resolving the parties' dispute, taking into account, *inter alia*, the connection between the activity at issue and the respective governments and the nationality and residence of the parties.  *E.g.*, *Finova*, 180 F.3d at 900 (St. Lucia's "substantial interest" in parties' dispute outweighed U.S. interest); *Ingersoll*, 833 F.2d at 685 (Belgium's "very significant" interest outweighed U.S. interest); *Mujica*, 771 F.3d at 603–05 (Columbia's interest outweighed U.S. and California interest).

At its core, this case is a dispute centered on Chinese intellectual property that arose due to actions in China between Chinese companies.  China's interest far outweighs any U.S. interest in having the dispute resolved within its borders.  The plaintiff is a Chinese-based company that has sued Chinese subsidiaries related to Defendants, and the primary accused actor is a Chinese citizen who works and resides in Beijing.  The underlying intellectual property rights are Chinese-

registered copyrights and Chinese trade secrets based on software developed and ███████.

Meishe's core allegations assert that a Chinese employee of Meishe breached his Chinese employment contract and violated Chinese law by misappropriating Meishe's source code from its headquarters in China, and thereafter began working for another Chinese company to develop software in China by allegedly copying and using Meishe's source code.

Moreover, the question of whether Mr. Xie violated his employment contract or misappropriated any Meishe trade secrets is expressly governed by Chinese law pursuant to a Chinese choice-of-law provision in Mr. Xie's Chinese employment contract, *see* Pan Decl. ¶¶ 48–51, further weighing in favor of China's interest over any U.S. interest.  *See Multi Holsters*, 2017 WL 4098857, at *6 ("[B]ased on a choice-of-law provision in the Confidentiality and Non-Disclosure Agreement, the claim for breach of confidence and breach of fiduciary duty claims pending in Ontario are governed by Ontario law, suggesting that Ontario is the more logical forum for adjudicating the parties' dispute."); *Hale v. Fr. Lurssen Werft Gmbh & Co.*, No. 9-cv-23787, 2010 WL 11601558, at *3 (S.D. Fla. Apr. 23, 2010) (similar).

V.    **CONCLUSION**

For the reasons above, Defendants respectfully request the Court to issue an order staying this case pending resolution of Meishe's earlier-filed Chinese actions.

Dated: March 14, 2022

Respectfully submitted,

PAUL HASTINGS LLP


By: */s/ Yar R. Chaikovsky*
    Yar R. Chaikovsky
    yarchaikovsky@paulhastings.com
    Philip Ou
    philipou@paulhastings.com
    David Okano
    davidokano@paulhastings.com
    Andy LeGolvan (*pro hac vice* granted)
    andylegolvan@paulhastings.com

1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:    1(650) 320-1800
Facsimile:    1(650) 320-1900


    Jeff Pade (*pro hac vice* granted)
    jeffpade@paulhastings.com

2050 M Street NW
Washington, D.C. 20036
Telephone:    1(202) 551-1700
Facsimile:    1(202) 551-1705


    Andy E. McSwain
    State Bar No. 13861100
    mcswain@thetexasfirm.com
    Dan N. MacLemore
    State Bar No. 24037013
    maclemore@thetexasfirm.com

220 South Fourth Street
Waco, Texas 76701
Telephone: (254) 776-5500
Facsimile: (254) 776-3591


Attorneys for Defendants
TIKTOK INC., TIKTOK PTE. LTD.,
BYTEDANCE LTD., and BYTEDANCE INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

## CERTIFICATE OF CONFERENCE

Counsel for the parties have complied with the meet and confer requirement in Local Rule CV-7(g).  On March 2, 2022, counsel for Defendants contacted counsel for Plaintiff regarding this motion. Plaintiff stated that it was opposed to the relief requested herein. Accordingly, the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky