## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRCT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| BEIJING MEISHE NETWORK | § | |
| TECHNOLOGY CO., LTD., | § | |
| *Plaintiff* | § | **W-21-CV-00504-ADA-DTG** |
| | § | |
| **vs.** | § | |
| | § | |
| TIKTOK INC., TIKTOK PTE. LTD., | § | |
| BYTEDANCE LTD., BYTEDANCE | § | |
| INC., | § | |
| *Defendants* | § | |

## DEFENDANT'S APPEAL FROM AND OBJECTIONS TO ORDER ON MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Appendix C to the Local Rules for the U.S. District Court for the Western District of Texas, Defendants TikTok, Inc., TikTok Pte. Ltd., ByteDance, Ltd., and ByteDance, Inc. appeal from the Magistrate Judge's Order Denying Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a) entered on April 11, 2023, and make the following objections to the Order. The Order should be reversed, and this case should be transferred to the U.S. District Court for the Northern District of California.

## I.     SUMMARY OF THE ARGUMENT

Despite Defendants providing extensive legal and factual support to demonstrate that the North District of California is a clearly more convenient venue than the Western District of Texas, the Order misstates the relevant facts and Fifth Circuit legal factors to deny a transfer of venue. The Order ignores many of the critical facts thoroughly recounted by Defendants and latches on to a few ideas that are not supported by the record to improperly deny transfer. As a result, the Order relies on the incorrect facts and applies them to inapplicable, incomplete, or easily distinguishable case law.

Under Fifth Circuit law, the movant need not show that the transferee forum is far more convenient, only that the "transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*); *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). Nevertheless, the Order misevaluates the facts and law related to the relevant convenience factors and disregards what would otherwise be fair. In multiple instances, the Order references the established Fifth Circuit precedent that no single issue is dispositive of Section 1404(a) analysis but ignores that courts must place more emphasis on some factors than others. *Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 704 (W.D. Tex. 2008); *Ray Mart, Inc. v Stock Building Supply of Texas, LP*, 435 F. Supp. 2d 578, 590-91 (E.D.

Tex. 2006); *Spiegelberg v. The Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790-91 (S.D. Tex. 2005); *Woolf v Mary Kay, Inc*. 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001).

This is a case brought by a Chinese company about conduct that occurred in China. By maintaining venue in the Western District of Texas, the Court is forcing the parties to hurtle towards a trial in a state where not a single relevant piece of evidence is located and where no witness lives or works. Conversely, the Northern District of California is where the source code at issue in this copyright infringement case can be accessed, all of the documents regarding the work on the source code are located, the applicable financial records are located, and where all the United States-based employees for Defendants who are engaged in the alleged conduct live and work. To the extent any conduct complained of by Plaintiff took place in the United States, it took place in the Northern District of California.

Moreover, California is the only place where any third-party witness is alleged to live or work. A conflict of law analysis even supports the application of California or Chinese law to Plaintiff's common law claims. On top of these facts, the Order ignores the Court's prior holdings that Defendants' witnesses, the relevant third-party witnesses, and local factors support venue in the Northern District of California. *See Triller, Inc. v. ByteDance, Ltd*, No. 6:20-cv-693-ADA, 2021 WL 3913589 (W.D. Tex. July 9, 2021); *10Tales, Inc. v. TikTok, Inc.*, No. 6:20-cv-810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021). Simply put, the Order misstates the critical law and evidence to reach a result contrary to the Supreme Court's instructions to focus on issues of convenience and fairness when deciding Section 1404(a) motions. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The result is manifest errors in identifying the relevant facts and applying the proper legal standard to deny transfer.

## II.   <u>RELEVANT FACTUAL BACKGROUND</u>

This copyright case revolves around Plaintiff's claims that a Defendant employee copied software source code belonging to Plaintiff when that employee worked for Plaintiff in China and then copied that code into Defendants' source code in China. Plaintiff alleges the infringing source code was then incorporated into the TikTok app by Defendants' Northern District of California based engineering team and offered to the public through Apple and Google—companies headquartered in the Northern District of California.

The software engineers in the United States responsible for incorporating and maintaining the allegedly infringing code into the TikTok app work in the Northern District of California. Dkt. 46-2, ¶ 8; Ex. 16, 8; Ex. 22, 42:19-43:5, 49:23-52:16, 103:11-104:11; Ex. 36, 27:1-37:3; Dkt. 58-3 ¶ 16. Dkt. 64, 4; Dkt. 58-4 ¶¶ 2, 8, 11. Consequently, to the extent the source code was included in, worked on, or otherwise incorporated into Defendants' TikTok application in the United States, those acts occurred in the Northern District of California. There is not one piece of evidence to the contrary. There is not and never has been anyone responsible for working on the allegedly infringing source code working or living in the Western District of Texas. Plaintiff has not identified a single person living or working in Texas who is likely to be a witness in this case.

Because of the highly confidential nature of the allegedly infringing source code, access to the source code is tightly restricted. While the source code is housed and maintained on computers in China, it can be accessed from the Northern District of California by the engineers located in the Northern District of California. Outside of unusual circumstances when limited portions of the source code can be accessed outside of the Northern District of California, the only location outside China where the portions of the source code at issue have been accessible is the Northern District of California. Consequently, to the extent any of the alleged infringing source code was accessed

in the United States, it would have been accessed by Defendants' engineers in the Northern District of California. Dkt. 46-2, ¶ 8; Ex. 16, 8; Ex. 22, 42:19-43:5, 49:23-52:16, 103:11-104:11; Ex. 36, 27:1-37:3; Dkt. 58-3 ¶ 16. Dkt. 64, 4; Dkt. 58-4 ¶¶ 2, 8, 11.

Moreover, every third-party witness for whom compulsory process might be necessary lives in California—where they would be subject to compulsory process in the Northern District of California. Dkt 58-3 ¶¶ 17, 19; Dkt 146-28, 33:16-23, 78:19-20:24; Dkt 146-14, 15-20. Defendants properly identified a specific set of witnesses not under its control who reside or work outside the subpoena powers of the Western District of Texas—all of whom live and work in China or California. *See Volkswagen II*, 545 F.3d at 317. This Court already has recognized—in other cases against TikTok and ByteDance—that the third-party witnesses in this case are located in California. *10Tales*, 2021 WL 2043978, *3 (acknowledging in support of transfer to the Northern District of California that Google and Apple will have employees and evidence in California relevant to the use of the TikTok application). As previously acknowledged by this Court, these third parties have evidence regarding downloads of the TikTok application and information relevant to revenue associated with the TikTok application that is necessary to this case. *See id.*

The Northern District of California is the only place in the United States where the U.S.-based engineers responsible for maintaining and incorporating the allegedly infringing code into the TikTok app are located might have committed any potentially actionable conduct. Since that is where the financial records are kept, that is where the records of any revenue associated with the infringing conduct will be. Because that the Northern District of California is where any interactions between Defendants and Google and Apple take place and Google and Apple are located, it is where any actions involving third parties that support Plaintiff's claims would have occurred. As a result, the Northern District of California is where any United States acts that could

form the basis of Plaintiff's claim took place.

Because all the party and third-party witnesses, and all the relevant evidence are located in the Northern District of California, elsewhere in California, or China, the traditional convenience factors—which a court must weigh most heavily when evaluating a Section 1404(a) motion—support transferring this case to the Northern District of California. Moreover, there is no factor that weighs in favor of maintaining the case in the Western District of Texas. Even the common law claims support transferring this case because a conflict of laws analysis would result in California or Chinese law being applied, so the Court's familiarity with Texas law is of no relevance to this case.

## III.   ARGUMENT

The factors the Court was required to evaluate weigh in favor of transferring the case to the Northern District of California. Because the only witnesses and evidence are located in the Northern District of California or elsewhere in California, the access to proof, compulsory process, and cost of attendance factors heavily support transfer. Moreover, looking at this case as of the time the motion to transfer was filed (as required under Fifth Circuit law), the ease, expeditious, and expense factor is, at worst, neutral. Any differences in court congestion are also minimal, so this most speculative of factors is also neutral at worst. This Court's holding in *10Tales* and *Triller* considered the very same local factors and found they supported transfer, and there is nothing about this case that makes it different or supports the opposite holding. *See Triller*, 2021 WL 3913589, *4-5; *10Tales,* 2021 WL 2043978, *3-4. Finally, a choice of law analysis under Texas law would result in California or Chinese law being applied, such that familiarity with local or foreign law are no worse than neutral, if not supportive of transfer.

Accordingly, this case should be transferred to the Northern District of California.

**A.  The jurisdictional concern raised by the Order is irrelevant because no claim is being asserted against Plaintiff.**

In multiple instances, the Order gave too much weight to Plaintiff's choice of venue. While the plaintiff's choice of venue is accorded some deference, *In re Horseshoe Entm't*, 337 F.3d 429, 434–35 (5th Cir. 2003), that deference is already taken into account by the Fifth Circuit's "clearly more convenient" standard; Fifth Circuit precedent forbids treating the plaintiff's choice of venue as a distinct factor in the Section 1404(a) analysis, *Volkswagen II*, 545 F.3d at 314–15 & n.10. Here, the Order appeared to weigh the plaintiff's choice independently by questioning whether the Northern District of California would have jurisdiction over Plaintiff. In doing so, the court erred in giving weight to the plaintiff's choice of venue when evaluating multiple factors.

The cases cited by the Court in support of its position that it should consider whether Plaintiff was subject to the jurisdiction in the Northern District of California are easily distinguishable from this case. It was the existence of claims against the plaintiffs in those cases that led the courts to consider whether the alternative district had personal jurisdiction over those plaintiffs. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 780 (E.D. Tex. 2009).[1] The *Sanofi* case, which the Order relies upon, based its discussion regarding jurisdiction over a plaintiff upon the fact that the defendant there had asserted claims against the plaintiff. *Id.* It was because the *Sanofi* plaintiff and the plaintiffs in the cases cited by the *Sanofi* court were facing claims over which the transferee court would not have jurisdiction, that those

---

[1] *See, e.g., Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 198 (S.D.N.Y. 2000) (where an Israeli corporation sued in the Southern District of New York and one Defendant subsequently brought a declaratory judgment suit in the District of Kansas then moved to transfer the New York case to Kansas, the court denied the motion, stating "If I were to transfer this case to Kansas only to find the Kansas court lacks jurisdiction over [Plaintiff], [Plaintiff] would, in effect, have no remedy other than bringing another action in this or some other forum."); *Tape & Techs., Inc. v. Davlyn Mfg. Co., Inc.*, No. 04-cv-1150-XR, 2005 WL 1072169 at *4 (W.D. Tex. May 6, 2005) (Plaintiff was a Texas corporation, Defendant was a Pennsylvania corporation, Defendant filed a patent infringement action in the Eastern District of Pennsylvania, and Plaintiff subsequently filed a declaratory judgment action in the Western District of Texas, the district court denied Defendant's motion to dismiss in the Western District because "[t]here remains a question of whether the Eastern District of Pennsylvania may properly exercise personal jurisdiction over Plaintiff.").

courts considered jurisdictional issues. *See id.* That is not an issue here. Nevertheless, on multiple occasions the Order noted the potential lack of jurisdiction over Plaintiff as a basis to weigh factors against transfer. The Order's repeated emphasis on jurisdictional issues is misplaced and irrelevant.

**B. <u>The Order incorrectly attributes less weight to Defendants' evidence introduced on reply.</u>**

The Order suggests that the evidence Defendants filed with their reply merits less consideration. This is an erroneous application of Fifth Circuit precedent. *See RedHawk Holdings Corp v. Schreiber*, 836 F. App'x 232, 235–36 (5th Cir. 2020) (no Fifth Circuit cases suggest evidence attached to reply should be discounted where other party has opportunity to respond). Particularly where the respondent is permitted a sur-reply (as Plaintiff was here), evidence attached to a reply is deserving of equal consideration as evidence submitted with a motion. *See id.*

Plaintiff filed a sur-reply, so it had an opportunity to respond to the evidence provided in Defendants' reply. Consequently, the Court should have considered the evidence included with the reply in the same manner and giving it the same weight as the Court did any other materials.

In addition, the idea that materials provided with a reply should receive less consideration ignores the reality of the procedural posture of the case permitted and ordered by the Court. When a court permits venue discovery after a motion to transfer is filed, there will necessarily be the development and production of evidence after the motion has been filed. The only way for any of this to be provided to the court by a movant is by a reply that includes evidence developed during venue discovery. Otherwise, the court is permitting a respondent to develop evidence that only it has the benefit of using in its response, without the movant being permitted to offer contrary evidence or evidence providing appropriate context for the evidence cited by a respondent. It is

not fair or equitable if the movant is not permitted to utilize evidence like the respondent.[2]

### C. The better access to sources of proof in the Northern District of California weighs strongly in favor of transfer.

The Order legally and factually errs in concluding that the relevant proof is equally available in Texas as in California. The record demonstrates the exact opposite. The Order's focus on the fact that much of the evidence is electronic—and legal conclusion that the access to proof factor is not particularly important—is exactly what the Fifth Circuit admonished courts to avoid (as well illustrated by the fact that the source code is regularly accessible only in the Northern District of California even though it is electronic). *Volkswagen II,* 545 F.3d at 316. The fact "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Id.*

While the alleged wrongful acts occurred in China, to the extent any actions related to the source code could have occurred in the United States, they would have been taken by Northern District of California-based engineers. Dkt. 46-2, ¶ 8; Ex. 16, 8; Ex. 22, 42:19–43:5, 49:23–52:16, 103:11-104:11; Ex. 36, 27:1–37:3; Dkt. 58-3 ¶ 16. Dkt. 64, 4; Dkt. 58-4 ¶¶ 2, 8, 11. Obviously, Defendants are adamant that they have not committed the actions at issue, but to the extent any actions contributing to the complained of conduct occurred in the United States, those actions occurred in the Northern District of California.

The parties agree that there are numerous witnesses in California, particularly in the Northern District of California, who will be witnesses in this lawsuit. Defendants' Head of Intelligent Creation, Defendants' audio-video engineering team, Defendants' employees who work with Google and Apple to distribute the TikTok app, Defendants' Head of Finance who is

---

[2] In addition to the fact a sur-reply was permitted—so that the Court's concern about evidence included with the reply is misplaced—Plaintiff's Response focused in large part on claimed discovery misconduct by Defendants. The evidence cited by the Court in its Order was provided, in part, to show there had not been any such misconduct.

knowledgeable about revenue from the app, and Defendants' project management office that coordinates with Oracle of America, Inc. are all in the Northern District of California. Dkt-26 at 64:1-8; Dkt. 58-4; Dkt. 146-5, 8, 14; Dkt. 146-12 at 38:12-24, 42:19-43:5, 49:23-52:16, 60:9-61:21, 103:11-104:11,; Dkt 146-24 at 27:1-37:3; Dkt 58-3.

The record also shows that any relevant U.S.-based engineering notes, emails, and documents are in the Northern District of California. Dkt 58-3, ¶¶ 16, 21; Dkt. 146-24, 42:19–43:2. Defendants' financial documents and records of distribution are in the Northern District of California. Dkt-3 ¶¶ 17, 19, 20.

Most importantly, the allegedly infringing portions of the source code that forms the basis for Plaintiff's claims are not accessible anywhere in the United States other than in Mountain View, California—which is in the Northern District of California. Dkt 58-3, ¶ 22. The only basis cited for the proposition that the principal evidence in this case—source code—is accessible from anywhere is the Court's selective use of testimony from one engineer who lived in Irving, Texas for a brief period immediately after being hired. What the record indicates is a small portion of the source code (there is no evidence that it is the portion of the source code at issue in this lawsuit) was accessed by one engineer during the brief time he worked for Defendants in the Northern District of Texas. It is undisputed that this individual was hired into Defendants' Mountain View, California office while access to Defendants' offices in California was limited following the COVID-19 pandemic. Dkt 58-3 ¶ 16; Dkt 146-22 at 78:4–79:4. Once the offices fully reopened, this engineer moved to the Mountain View office where all of the United States-based engineers engaged in the development of the source code at issue work and reside, and where the source code is accessible. Dkt 58-3 ¶ 16; Dkt 146-22 at 78:4–79:4. The result is someone who once lived in the Northern District of Texas for a very limited period, but no longer does, and accessed a

portion of source code that has not been shown to be relevant to the issues in this case.

The Order claims that it is plausible that employees in the Western District of Texas may have evidence, but the Order does not identify who these employees are or what evidence they may have. The only person cited by the Order was what the Court identified as the one United States-based director for Defendants, but there is no indication that individual has any relationship to any of the events at issue, and there is certainly no evidence presented by Plaintiff or in the Order that this one person has any relevant materials. The Order goes so far as to claim that the presence of this one person "significantly undercut[s]" Defendants' position that there are no sources of proof in the Western District of Texas, but the Order does not cite to any relevant knowledge anyone in the Western District of Texas might have or a single piece of evidence located in the Western District of Texas. The only evidence about this person is that he oversees a group of people who sell advertising for Defendants, but he has no evidence of any profits or costs—people with that information are in California. Ex. 22 at 89:6–9, 91:17–95:16; Dkt. 58-3 ¶ 18; Ex. 46.; Dkt. 58-3 ¶¶ 4, 17; Ex. 22 at 60:9–61:21. The Court previously noted this person was not a sufficient presence to maintain venue in this district. *See 10Tales*, 2021 WL 2043978, *4.

The Order goes further and pronounces that Defendants' argument that there is no evidence in the Western District of Texas is an overstatement born of Defendants' "zealous advocacy," but the Order, like Plaintiff's briefing, does not point to what the actual evidence is that is in the Western District of Texas. The Order merely proclaims that there is "some relevant evidence in WDTX," but it never identifies that evidence—because there is none. Conversely, Defendants have shown that the evidence that is relevant to Plaintiff's claims is in China or the Northern District of California. If the Court truly believed that Defendants' claim was an overstatement, it should have been able to point to at least one piece of evidence in the Western District of Texas.

The relevant individuals and evidence are in China, with any relevant U.S.-based evidence and witnesses in the Northern District of California, and there is no proof of any relevant person or evidence in the Western District of Texas. Consequently, the record and the law clearly demonstrate that there is better access to proof in the Northern District of California, and the Order's conclusion otherwise is legally erroneous.

**D.** <u>**The Order legally errs in discounting the Northern District of California's unique ability to compel non-party witnesses based in California to testify.**</u>

A venue that has "absolute subpoena power for both depositions and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. The inability to compel third party witnesses to appear is one of the more important factors in the 1404(a) analysis. The Order admits that it is sufficient to allege that there are witnesses that would be unwilling to come to Texas to testify, and that is exactly what Defendants did. *In re Planned Parenthood Fed'n of Am. Inc*., 52 F.4th 625, 631 (5th Cir. 2022).[3] Nevertheless, the Order claims otherwise. The Order also ignores the fact that there are third party witnesses in California, who even if they are willing to appear, will have to take considerably more time and incur more cost to appear in Waco, Texas than in Northern California.

Defendants did identify witnesses who work for third parties—Google and Apple—who are outside the Western District of Texas's subpoena power. Eight specific third party witnesses working and living in the Northern District of California were identified by Defendants, but this was ignored in the Order. Dkt 58-3 ¶¶ 17, 19; Dkt 146-28 at 33:16–23, 78:19–20:24; Dkt 146-14, 15–20; *see also* Dkt. 214-2 (Defendants' Transfer Hearing Demonstratives) at 8–9. It is undisputed

---

[3] The Order heavily relies upon the Fifth Circuit's recent *Planned Parenthood* opinion, but it should be noted that the although the Fifth Circuit set out the various elements, it provided almost no discussion about the relevant elements or how they should be applied. The cases that opinion cites to and the cases actually leading to the development of the relevant factors are more instructive on how to establish the facts and how they should be weighed.

that Google and Apple employees have information important to this case—including information about these companies' interaction with Defendants, the use of their products, and the development of the Software Development Kits for use on Google's Android and Apple's iOS operating systems—and that this evidence is in California. Dkt. 58-3, 17, 19; Ex. 22 at 38:12–24; Ex. 16 at 14.

Determining any potential damages will require testimony from third party witnesses. Within the United States, the infringing application is made available to end users through the Apple and Google application stores. Evidence about how frequently users downloaded this application—and associated cost, expenses, and revenue—will come from Google and Apple. Google and Apple employees will be deposed. Defendants have alleged that these people are in California—something this Court previously recognized. *See 10Tales*, 2021 WL 2043978, *3. Neither party has alleged any such witnesses are in Texas.

Plaintiff's own pleading reference the importance of Google and Apple in disseminating the application that is alleged to be the infringing publication, such that Google and Apple employees will necessarily be witnesses in this case. The Order acknowledges as much. What the Order does not do, however, is realistically consider whether these individuals who live in California would be willing to take time away from work and family to willingly appear in a courtroom 1200 miles away absent compulsion. Failing to consider this evidence violates the Fifth Circuit's emphasis that the 100-mile rule must be given added weight in the transfer analysis. *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) (*Volkswagen I*).

The Order mistakenly takes the position that Defendants have the burden of identifying specific witnesses who are actually unwilling to appear in the Western District of Texas. The Order provides no legal support for its position. Indeed, the Fifth Circuit has rejected the notion that an

affidavit or similar evidence regarding the substance of a particular witness' anticipated testimony is necessary to support the compulsory process factor. *See Volkswagen II*, 545 F.3d at 317 n.12. What the Fifth Circuit requires—and what Defendants did—was allege that there were witnesses who were unlikely to appear absent some ability to compel their attendance because they are non-parties and work for non-parties. *See id.*

Moreover, it simply does not make sense for a party to have to go to each non-party witness that may be called to testify—at the very outset of the case—and ask for and receive confirmation that the individual will or will not attend if only asked to do so. In addition, the willingness to do so at the time a motion to transfer venue is filed is no guarantee that the same will be the case once trial actually arrives. When the parties agree that third party witnesses located outside of the venue will be necessary for proving their claims, as they do here, that should be enough. *See Volkswagen II*, 545 F.3d at 316.

### E. **With not one single identifiable witness located in the Western District of Texas, the cost of attendance weighs heavily in support of transfer.**

Since there is no one in the Western District of Texas who might be a witness in this lawsuit, the presence of actual witnesses in the Northern District of California and other areas of California means that this factor strongly supports transfer. While the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Qes Pressure Control LLC v. Zurich Am. Ins. Co.*, No. 20-cv-50-DC-DF, 2020 WL 6821335 *6 (W.D. Tex. Aug. 21, 2020).

The lack of any identifiable witnesses within a district strongly weighs in favor of transfer to a district where every party agrees relevant witness can be found. *See Volkswagen II*, 545 F.3d at 316. There has not been a single person who lives or works in the Western District of Texas

identified as a relevant witness to the parties' disputes, but the Order gives little weight to this amazing fact. The Order gives short shrift to the fact that all of the United States based witnesses are located in California – mostly in the North District of California.

The Order does not even address the longer and less convenient travel for the China based witnesses. The Order assumes that it would be no more inconvenient for any Chinese witnesses to travel to Waco, Texas than to the San Francisco, California area to attend trial. That is simply not true. Chinese witnesses would be forced to travel further to Dallas rather than San Francisco, and once they arrived in Dallas, they would need another flight or a two-hour drive to Waco.

The Plaintiff and the Order acknowledges that the engineers responsible for the source code at issue that are in the United States are all located in the Northern District of California. Dkt 46-1 at 15–16. That means that all of those with actual knowledge about the very item at issue are in the Northern District of California.

The Order also takes exception to Defendants' position that this is the most important factor in the analysis by citing *Planned Parenthood*'s statement that no single factor is dispositive of the venue issue. What the Order seems to miss is that, while no one factor may be dispositive, some factors are more important. Every circuit, including the Fifth, recognizes that the convenience and location of witnesses is "often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a)." 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3851 (4th ed.).

The Fifth Circuit precedent in assessing cost of attendance also gives greater weight to this factor—increasing the weight afforded this factor the further witnesses would have to travel. Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established a "100-mile" rule. *See Volkswagen I*, 371 F.3d at 204–05. As the Fifth Circuit has noted:

When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Id*. This is clearly an attempt to increase the weight given this factor based on the number of witnesses who will have to travel to attend court and how far they must travel.

The Order disregarded the 100–mile rule. Because all of the identified key witnesses in this case are in California or China, the witnesses would need to travel over 1000 more miles to attend trial in Texas than in California. Despite this distance and added cost to the witnesses, the Order gave little weight to this inconvenience. *Id*. The Order's disregard of the 100–mile rule constitutes legal error. Because the identified witnesses would need to travel a significantly further distance from home to attend trial in Texas than California, the failure to considerably weigh this factor in favor of transfer was erroneous. *See Volkswagen I*, 371 F.3d at 204–05.

**F.**  **The Order improperly uses Defendants' necessary litigation efforts against them to incorrectly conclude that the easy, expeditious, and expense factor weighs in favor of maintaining the case in Texas.**

The Order mistakenly places emphasis on the fact that this case has been pending for one year and that the Court has entertained five contested motions to find that the Court's resulting familiarity with the case supports maintaining the case in the Western District of Texas.[4] The Court's position ignores the fact that transfer motions must be evaluated based on the conditions that existed at the time the motion is filed. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

---

[4] Two motions were filed under Rule 12(b), which requires they be filed first. Another motion was the international abstention motion, which also needed to be filed almost immediately.

In addition, the delay and associated case development is a byproduct of the Court's decision to allow venue and fact discovery after Defendants sought a stay. As a result, the Order ignores the Fifth Circuit's admonition that the passage of time after the filing of a motion to transfer and the case development resulting from the lack of a ruling on a motion should not factor into the transfer decision. *See Horseshoe*, 337 F.3d at 433. The Order penalizes Defendants for proceeding with the litigation and essentially gives preference to Plaintiff's choice of venue, which should not be the case in the context of a Section 1404(a) motion. *Volkswagen II*, 545 F.3d at 314–15, 318.

In addition, venue motions should be decided expeditiously to avoid the very scenario the Court uses against Defendants. As the Fifth Circuit has noted, the result of delay in resolving a motion to transfer should not be considered because it would "militate against transfer in every case." *In re Radmax, Ltd*., 720 F.3d 285, 289 (5th Cir. 2013). The Fifth Circuit has held that delay in resolving a motion to transfer venue and related case events should not be used to deny a motion to transfer venue, but that is exactly what the Order does. *Horseshoe*, 337 F.3d at 433. That is why the Federal Circuit, citing Fifth Circuit precedent, has instructed the Court to promptly consider venue motions. *See In re Apple*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) (citing *Horseshoe*, 337 F.3d at 433). The fact that did not happen despite Defendants' multiple motions to stay should not force Defendants to remain in the Western District of Texas when the Northern District of California is clearly more convenient.

A plaintiff should not be able to game the venue system, but the Order allows for exactly that by permitting a plaintiff to manufacture venue by filing a case in an inconvenient venue, then forcing the parties to initiate the discovery process and all the disputes and related motions that may flow from it, and then using that very process to deny transfer. Such venue manipulation is wrong. Using the Order's logic, anytime any party filed in an incorrect forum and that forum was

challenged via a Section 1404(a) motion that resulted in venue discovery and ongoing fact discovery (despite a request for a stay) during which there were disputes brought to the court, this factor would always weigh against transfer. In every single instance, the court would develop a certain level of knowledge that the potential transferee court would not have, but the development of this knowledge would be the necessary result of a court permitting venue and fact discovery while waiting months to decide the venue issue. The result is that a plaintiff would be permitted to game the system by filing in the wrong venue. The fact that the Order not only condones such an approach but uses it as a basis for finding that this factor weighs against transfer is not equitable and contrary to the Fifth Circuit's prior holdings. *Radmax*, 720 F.3d at 289.

**G.** **The de minimis difference in the relative court's docket congestion is a neutral factor.**

Court congestion is the least important, most speculative factor to consider when evaluating a Section 1404(a) motion. *Planned Parenthood*, 52 F.4th at 631. The difference in the congestion between the two courts here is negligible. It has been noted that "NDCA and WDTX have historically had comparable times to trial for civil cases." *Apple*, 979 F.3d at 1343–44. The recent historical analysis seems like the more appropriate measure of this speculative factor. Proving that this is an element ever in flux, recent data from the Court's preferred statistics compiler—the Federal Judicial Center—shows that the current difference is between the time to trial in the Northern District of California versus the Western District of Texas is three months – less than that cited in the Order. *See* Federal Judicial Center, Federal Court Management Statistics, December 2022 (December 31, 2022). This least important factor should be afforded little weight, particularly given the slight difference in the two courts' congestion.

**H.  The Court already has ruled that the interest in having local controversies decided at home favors transfer to the Northern District of California.**

Although there is "a local interest in having local controversies decided at home," this case can hardly be characterized as a Western District of Texas local controversy. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). It is generally recognized by the parties and has been acknowledged by the Court in the recent past that two of the named Defendants are located in California with principal places of business in the Northern District of California. Moreover, to the extent any infringing conduct has occurred in the United States, it has happened in the Northern District of California. Plaintiff admitted this in its response to Defendants' Motion to Stay Under International Abstention. Dkt 46-1 at 1, 15–16, and 19–20.

The Order struggles to distinguish this case from *Triller* and *10Tales*, which involved the analysis of local factors for the same Defendants using the same Fifth Circuit law. While *Triller* and *10Tales*, the weights given the local interest factor issues that ultimately led to the transfer of *10Tales* and *Triller* to the Northern District of California are the same application of Fifth Circuit law that should have applied here. *See Triller*, 2021 WL 3913589, *4–5; *10Tales,* 2021 WL 2043978, *3–4.

As the Order admits, *Triller* involved witnesses in the Northern District of California that were necessary for both parties, third party witnesses located in California, and documents in the Northern District of California. *Triller*, 2021 WL 3913589, *4. The fact that was a patent case does not merit a different outcome of the relevant *Volkswagen* factors. Those exact same facts present here should be evaluated in the same way in this case—as weighing this factor for transfer.  Just like in *Triller*, this lawsuit has nothing to do with the Western District of Texas. The same facts here as in *Triller* should have weighed this factor in favor of transfer.

The *10Tales* plaintiff's failure to identify any specific witness in the Western District of

Texas further supported weighing this factor in favor of transfer. Like *10Tales*, this case also presents an instance where the Plaintiff does not identify one witness in the Western District of Texas. Nevertheless, the Order ignores the analysis of this issue and its impact on the localized interest factor in the *10Tales* opinion to reach the wrong conclusion on this factor here.

In *10Tales* and *Triller*, what was particularly important was the court's recognition of the fact that the engineers and nonparty witnesses were overwhelmingly located in California. *See Triller*, 2021 WL 3913589, *4–5; *10Tales*, 2021 WL 2043978, *3–4.  Just like here, the Court noted that these witnesses would be required by both parties to establish liability and/or damages. In this instance, however, the Order ignores this fact when considering the local interest factor.

The Order attempts to find support in *Planned Parenthood*, but nothing in that case suggests that *Triller* or *10Tales* were wrong, inapplicable, or distinguishable on the local interest factor. *Tiller and 10Tales* found that local interests required transfer of both cases to the Northern District of California, and the local interests here are no different, and should be analyzed as in both of those cases.

## I.   A conflicts of law analysis supports the application of California law, which balanced against the one Texas statutory based claim, supports transfer.

Defendants agree that the questions of federal law are equally able to be addressed in the Northern District of California or the Western District of Texas. The Texas conflict of law analysis, however, supports the application of China or California law to Plaintiff's common law claims, and California law would be better applied by the Northern District of California.

Under Texas conflict of law analysis, courts apply the "most significant relationship" test when there is no statutory directive to apply Texas law. *Stevenson v. Ford Motor Co*., 608 S.W.3d 109, 117–18 (Tex. App.-Dallas 2020, no pet.). To determine the substantive law applicable to an issue, the court considers (a) the place where the injury occurred, (b) the place where the conduct

causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* These contacts are to be evaluated according to their relative importance with respect to a particular issue. *Id.*

To the extent any injury has occurred in the United States, it is because of actions taken in China or the Northern District of California—where the actual work on the portions of source code at issue takes place in the United States. The principal means for downloading the TikTok application are overseen by Google and Apple in the Northern District of California. Defendants' headquarters and principal offices in the United States are in the Northern District of California. The injury was caused in China, and China is where Plaintiff is headquartered. Plaintiff should not be able to manufacture venue by attempting to bring a Texas claim.

Consequently, California or Chinese law should apply to the common law claims. Only one Texas statute is at issue. As a result, this factor should slightly weigh in favor of transfer, and at worst is neutral.

## IV.   <u>CONCLUSION</u>

Because the convenience factors point in one direction—towards Northern California—transfer was required, and Defendants respectfully submit this appeal and objections to the Magistrate Judge's Order Denying Defendant's 28 U.S.C. § 1404(a) Motion to Transfer Venue and request that the Court reverse the Order.

Respectfully submitted,

**BEARD KULTGEN BROPHY**
**BOSTWICK & DICKSON, PLLC**

Dan N. MacLemore

Page **20**

State Bar No. 24037013
maclemore@thetexasfirm.com
Andy E. McSwain
State Bar No. 13861100
mcswain@thetexasfirm.com
220 South 4th Street
Waco, Texas 76701
Tel (254) 776-5500
Fax (254) 776-3591

Yar Chaikovsky
yar.chaikovsky@whitecase.com
Philip Ou
philip.ou@whitecase.com
David Okano
david.okano@whitecase.com

WHITE & CASE, LLP
3000 El Camino Real,
2 Palo Alto Square, Suite 900
Palo Alto, California 94306
Telephone:  (650) 212-0300
Facsimile:   (650) 213-8158

Attorneys for Defendants
TIKTOK INC., TIKTOK PTE. LTD.,
BYTEDANCE LTD., and BYTEDANCE INC.